# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON GRANT, ALLISON TAGGART, LISA PETERSON, and SAMANTHA LYONS,<br><br>Plaintiffs,<br><br>v.<br><br>TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS, BEVERLY J. CANNONE, in her official capacity as Justice of the Superior Court, GEOFFREY NOBLE, as Superintendent of the Massachusetts State Police; MICHAEL d'ENTREMONT, in his official capacity as Chief of the Police Department of the Town of Dedham, Massachusetts, and MICHAEL W. MORRISSEY, in his official capacity as the Norfolk County District Attorney,<br><br>Defendants. | Civil Action No. _____<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, AN INJUNCTION PENDING APPEAL**<br><br>**[ORAL ARGUMENT REQUESTED]** |

Plaintiffs are four Massachusetts citizens who have been peacefully demonstrating against Judge Beverly J. Cannone for months.  Now, they risk jail if they continue to do so, in the same spot, at the same time. Judge Cannone issued an *ex parte* order, without due process and outside the scope of her authority, that acts as a content-based prior restraint.  Plaintiffs are not parties to any action before her and had no opportunity to be heard before she silenced them.  This Court must now act and enjoin her lawless order and the enforcement thereof.[1]  In the alternative, Plaintiffs seek an injunction pending appeal under Fed. R. Civ. P. 62(d).

---

[1] Plaintiffs are aware that Section 1983 explicitly provides that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.  This motion is not, therefore, directed at Judge Cannone.

## 1.0 Factual Background[2]

On January 29, 2022, John O'Keefe, a Boston Police Officer, died. On June 9, 2022, Karen Read was indicted in Norfolk County, Massachusetts for his murder. The case has drawn significant attention, including sharp criticism aimed toward Judge Beverly Cannone.

Cannone is the presiding judge in the Read prosecution, in the case styled *Commonwealth v. Read,* Case No. 2282CR00017 (hereinafter "*Read* Case"). The Norfolk County District Attorney's office, led by Michael W. Morrissey, is prosecuting the *Read* Case on behalf of the Commonwealth. A trial in the *Read* Case was held in 2024, which resulted in a mistrial after the jury failed to reach a unanimous decision (hereinafter "first trial"). A second trial in the *Read* Case began on April 1, 2025 (hereinafter "second trial").

Prior to the first trial, the Commonwealth filed a motion to *inter alia* create a "buffer zone" beyond the grounds of the Norfolk Superior Courthouse, to prohibit any individual from demonstrating in any manner about Read, law enforcement, the DA, potential witnesses, and evidence within 500 feet of the court complex during the trial. Massachusetts citizens Tracey Anne Spicuzza, Lorena Jenkinson, Dana Stewart Leonard, and Paul Cristoforo thereupon moved to intervene for the limited purpose of opposing the Commonwealth's buffer-zone motion. The motion to intervene was denied by Justice Cannone who declared that the citizens had no right to intervene, even though the sought-after order would directly affect them. Judge Cannone then issued an order granting the Commonwealth's motion, asserting that Read's right to a fair trial overcame everyone else's First Amendment rights, without regard for any differentiation between members of the public, and expressly ordered that:

---

[2] Unless otherwise stated, all facts are drawn from the Verified Complaint.

Memorandum of Law in Support of Plaintiff's Motion for a
Temporary Restraining Order and for a Preliminary Injunction

> no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. Individuals are also prohibited from using audio enhancing devices while protesting.

*See* Complaint, Exhibit A. Under that order, speech that does not qualify as a "demonstrate[on]" was not restricted. Thus, a nearby café could advertise breakfast using a bullhorn and parade its menu on picket signs and placards; Celtics and Bruins fans could honor the teams by hollering and carrying placards. Commercial speech actually did occur throughout the trial.

In advance of the second trial, the Commonwealth again moved for a buffer zone, but with a larger area (encompassing private property and traditional public fora, including public sidewalks and other areas). Without an opportunity for affected persons to intervene or be heard, Judge Cannone issued an Order on March 25, 2025, granting the Commonwealth's motion, asserting that the basis for the first motion warranted a larger buffer zone for the second trial, and expressly ordered that:

> no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. The buffer zone shall further be extended to include the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street. Individuals are also prohibited from using audio enhancing devices while protesting.

*See* Complaint, Exhibit C (hereinafter "Second Prior Restraint Order").

Plaintiffs Jason Grant, Allison Taggart, Lisa Peterson, and Samantha Lyons are Massachusetts residents. Since November 2024, Plaintiffs have regularly peacefully protested near the courthouse, holding signs criticizing Judge Cannone. Their demonstrations took place within the buffer zone of the Second Prior Restraint Order. For example, Plaintiff Jason Grant peacefully demonstrated on the sidewalk next to the courthouse holding signs reading "Judge Bev

is Conflicted" and "Bev's Court is a Clownshow" regarding and with images of D.A. Morrissey and Judge Cannone:



Their demonstrations were about Judge Cannone and occurred during trials presided over by Judge Cannone. There have been no adverse incidents and no trials have been disturbed. The First and Sixth Amendments coexisted.

However, now things are about to change. Karen Read's second trial is beginning and international media attention is focused on the Dedham Courthouse. Despite any pretextual arguments to the contrary, it appears that the only true reason Cannone and the Commonwealth want protesters hidden away from view is they do not want the press to see them.

Plaintiffs wish to continue to demonstrate, including criticizing Judge Cannone, off the grounds of the courthouse complex but within the buffer zone. Plaintiffs reasonably fear that Judge Cannone will attempt to hold them in contempt if they engage in such demonstration. Plaintiffs reasonably fear that the Norfolk County District Attorney's office, under the control and direction of Defendant Morrissey, will seek their prosecution for violation of the Order if they engage in

Memorandum of Law in Support of Plaintiff's Motion for a
Temporary Restraining Order and for a Preliminary Injunction

such demonstration. As Dedham Police officers took action to enforce the buffer zone order during the first trial, Plaintiffs reasonably fear that the Dedham Police Department, under the control and direction of Defendant d'Entremont, will arrest them for violation of the Second Prior Restraint Order if they engage in such demonstration. Similarly, as Massachusetts State Police officers took action to enforce the buffer zone order during the first trial, Plaintiffs reasonably fear that the Massachusetts State Police, under the control and direction of Defendant Noble, will arrest them for violation of the Second Prior Restraint Order if they engage in such demonstration. Thus, they come to this Court seeking injunctive relief against the order and enforcement thereof, as they have no recourse before Judge Cannone who not only would not permit intervention, but has a personal bias and hostility toward people who protest against her.

## 2.0 Legal Standard

Rule 65 of the Federal Rules of Civil Procedure provides for temporary restraining orders and preliminary injunctions in federal courts upon notice to the adverse party.[3] *See* Fed. R. Civ. P. 65(a) and (b). A temporary restraining order or preliminary injunction must (1) state the reasons why it issued; (2) state its specific terms; and (3) describe in reasonable detail the act or acts restrained or required. Fed. R. Civ. P. 65(d). Injunctive relief should be issued if: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm if the injunction did not issue; (3) the balance of equities tips in plaintiff's favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

---

[3] If this Court declines to enter the injunction, Plaintiffs request that the Court err on the side of the Constitution and at grant an injunction pending appeal per Fed. R. Civ. P. 62(d). Such is proper if the movant makes "a strong showing that they are likely to succeed on the merits, that they will be irreparably injured absent emergency relief, that the balance of the equities favors them, and that an injunction is in the public interest." *Together Emples v. Mass Gen. Brigham Inc*., 19 F.4th 1, 7 (1st Cir. 2021). The test is nearly identical to the standard test for a preliminary injunction. *See Winter v. NRDC, Inc*., 555 U.S. 7, 20 (2008).

"In the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (*per curiam*). At this stage, the "court need not conclusively determine the merits of the movant's claim; it is enough for the court simply to evaluate the likelihood . . . that the movant ultimately will prevail on the merits." *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020).

## 3.0    This Court Should Enjoin the Order and its Enforcement

### 3.1    Plaintiffs Have Standing

In First Amendment cases, there is standing when the plaintiff intends to engage in a Constitutionally protected activity, which has been proscribed by the government, and there is a credible threat of prosecution.  *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56-57 (1st Cir. 2003) (standing when a plaintiff "is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences").  In the First Amendment context in particular, a plaintiff has standing to sue if a challenged statute or regulation operates to "chill" the plaintiff's exercise of their First Amendment rights. *Doe v. Bolton*, 410 U.S. 179, 188 (1973).

The harm is readily apparent.  Judge Cannone issued her Second Prior Restraint Order that prohibits Plaintiffs' speech of a certain content in a place where Plaintiffs have been peacefully demonstrating for months.  Verified Complaint at ¶¶ 25-35.  Their speech is undoubtedly chilled— they face arrest and prosecution if they continue.  Thus, Plaintiffs have standing to bring suit and seek this injunction.

### 3.2    Plaintiffs are Likely to Succeed

Judge Cannone violated Plaintiffs' First and Fourteenth Amendment rights to free speech (Count I) and due process (Count II) by issuing the Second Prior Restraint Order that threatens

them with arrest by the Dedham Police and criminal prosecution by the Norfolk County District Attorney if they engage in conduct protected under the First Amendment. Plaintiffs are prohibited from demonstrating and speaking certain content in a traditional public forum without any process, let alone the due process to which they are entitled under law. Thus, Plaintiffs are likely to succeed on the merits of their claims.

### 3.2.1 Plaintiffs' First Amendment Rights are Violated

Judge Cannone violated Plaintiffs' constitutional rights by issuing her Second Prior Restraint Order. Because the order infringes on Plaintiffs' First Amendment rights, Defendants must justify their actions. *Comcast of Maine/New Hampshire, Inc. v. Mills*, 435 F. Supp. 228, 233 (D. Me. 2019) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 180 (3d Cir. 2017)); *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 509 (1969) ("In order for the State . . to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."). They cannot.

Plaintiffs' speech is protected under the First Amendment and the order is a content-based restriction. "The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws abridging the freedom of speech." *Mass. Coal. For the Homeless v. City of Fall River*, 486 Mass. 437, 440 (2020) (*quoting Reed v. Gilbert*, 576 U.S. 155, 163 (2015)) (quotation marks omitted). Plaintiffs' speech does not within one of the few "historic and traditional categories of expression long familiar to the bar" for which content-based restrictions on speech are clearly permitted. *United States v. Alvarez*, 567 U.S. 709, 717-18 (2012) (cleaned up). "Singing . . . whistling, shouting, [and] yelling" are forms of speech protected by the First Amendment. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 772 (1994). Demonstrating is

protected by the First Amendment. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152 (1969) (describing privilege of citizens to assemble, parade, and discuss public questions in streets and parks).

Content-based regulations are subject to strict scrutiny, which requires the government to demonstrate "a compelling interest and . . . narrow[] tailor[ing] to achieve that interest." *Reed,* 576 U.S. at 155 (*quoting Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). Narrow tailoring in the strict scrutiny context requires the restriction to be "the least restrictive means among available, effective alternatives." *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004). Defendants' actions fail strict scrutiny.

There is no compelling interest in restricting a citizen from publicly and peacefully demonstrating against a judge. Plaintiffs have not done anything that would arise to "serious evil" that justifies the restrictions imposed by Defendants. *See United States v. Treasury Employees*, 513 U.S. 454, 475 (1995). Defendants have no reasonable justification their actions. While Judge Cannone purports to be protecting Ms. Read's right to a fair trial, Read did not seek the prior restraint—it was the Commonwealth that did so. If Plaintiffs' months of demonstrations did not compromise anyone else's right to a fair trial, they will not compromise Ms. Read's.

Defendants are expected to argue it is a content-neutral regulation because it changes the location of the content but does not prohibit the speech altogether. This is a fallacy. Even facially content-neutral regulations will be considered content-based if they cannot be "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, only specific speech is prohibited. In contrast, commercial speech advertising a nearby café is permitted. Celtics and Bruins fans may loudly demonstrate in favor of their teams in the buffer zone. The only thing prohibited is specific content.

In the attempted challenge to the buffer zone order for the first trial, made by different individuals, the Massachusetts Supreme Judicial Court determined that it was content neutral, because it had an "incidental effect on some speakers or messages but not others" citing *Ward*. *Spicuzza v. Commonwealth*, 494 Mass. 1005, 1008 (2024). The regulation in *Ward* was about volume and expressly had nothing to do with content. In contrast, one must directly look at the content of the speech barred under the first and, now second, Orders from Judge Cannone: an individual may hold up a sign within the Zone that says "Marry Me" or "Buy Gold," but if the sign says "Impeach Judge Cannone" it is barred. There is nothing "incidental" about it—it is expressly aimed at content. And *Ward* would be just fine if it were applied here – perhaps a limitation on the volume of demonstrations *could* be justified, but not a wholesale lockdown on dissent.

Assuming, *arguendo*, the "buffer zone" is content neutral, such restrictions are subject to intermediate scrutiny, meaning they must be "narrowly tailored to serve and significant government interest, and … leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The order is not narrowly tailored—Judge Cannone could simply instruct jurors to ignore the demonstrations. The order need not be directed at such a broad amount of speech. And, it does not leave open ample alternative channels—the news media cover the area closest to the courthouse, leaving Plaintiffs unheard. The *Spicuzza* Court asserted it was narrowly tailored because 200 feet is less than the original 500 feet the Commonwealth request, but that does not justify 200 feet. 494 Mass. at 1008. Thirty feet is enough to ensure passage for those who need access. And, as to the fear of extraneous

influence (*id.*), curative jury instructions are commonplace.[4]  While the *Spicuzza* Court asserted there were ample alternative channels, it made this pronouncement in the absence of record evidence and identified none.  494 Mass. at 1008.

Sidewalks and streets and parks outside a courthouse are given even greater First Amendment deference than the inside of the courtroom. "For the First Amendment does not speak equivocally. . . . It must be taken as a command of the broadest scope that explicit language, read in the context of a liberty-loving society, will allow." *Bridges v. California*, 314 U.S. 252, 263 (1941).  Sidewalks, including sidewalks around courthouses, are traditional public forums. *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 817 (1985); *United States v. Grace*, 461 U.S. 171, 177 (1983), quoting *Perry Education Assn. v. Perry Local Educator's Assn.*, 460 U.S. 37, 45 (1983). Public streets and sidewalks, "are presumptively traditional public forums, and the Supreme Court has repeatedly reaffirmed their status as places for expressive activity." *Watchtower Bible & Tract Soc'y of N.Y., Inc v. Jesus*, 634 F.3d 3, 11 (1st Cir. 2011). The *Spicuzza* Court expressly avoided reaching this issue, asserting that it did not have a sufficient record.  494 Mass. at 1008.  In contrast, this Court has verified statements that the buffer zone does, in fact, include sidewalks and other areas that are traditional public fora, thus the *Spicuzza* decision is inapposite and should be disregarded.

The Second Prior Restraint Order substantially and directly violates the First Amendment. The Superior Court did not even *consider*, much less correctly analyze, its obligations to narrowly tailor the Zone, nor did it consider, much less implement, any less restrictive means.  The Superior Court simply napalmed the entire First Amendment in a vaguely-defined area.

---

[4] Courts, for example, routinely instruct jurors to ignore protestors who remind jurors of their power to acquit against the evidence (also known as "jury nullification"), which instructions are abided.  *See, e.g., United States v. Kleinman*, 880 F.3d 1020, 1031 (9th Cir. 2018).

Memorandum of Law in Support of Plaintiff's Motion for a
Temporary Restraining Order and for a Preliminary Injunction

Judge Cannone did not define "demonstrate," yet it could encompass a broad swath of constitutionally protected conduct that would have no possible effect on the purported purpose for the Zone. Given the ill-defined term, citizens are left to guess what they can and cannot do. Can they march in a single column? Not if "demonstrate" prevents that. Can they hold a candlelight vigil? Probably not. When they are left to define "demonstrate" on their own, and the penalty for guessing wrong is contempt, this does not even meet rational basis review, much less strict scrutiny.

Temporally, when does this restriction apply? The Superior Court said it was "during trial." Is that the six week period of trial, or is it the technical interpretation of "gavel to gavel?" If the former, that would mean even at midnight on a Saturday, there can be no demonstrations. If the latter, then what purpose does it serve, since the jury will not be outside, but will be in the courthouse? The Superior Court's Order is so unbalanced that it does not stand even slightly-rational analysis.

If the Superior Court has the power to reach outside the courthouse (which seems suspect), and the ban were limited to jury selection only, this might be rational. During trial, the jury can be brought in through the back entrance to the courthouse, and demonstrators could be banned from that entrance. Any infringement on First Amendment rights from these narrowly tailored and limited remedies would be de minimis enough that more zealous parties might complain, but these Plaintiffs would not challenge them.

Plaintiffs, had they been given an opportunity to be heard, would have suggested the following narrow tailoring devices:

1.    Any restrictions on demonstrations should only be during jury selection, when prospective jurors will be entering through the main entrance and they cannot be

instructed to enter through the alternate entrances.

2.      Any concerns about tainting the jury or witnesses should be limited to actual contact with jurors or witnesses. Any concerns about demonstrators influencing them should be addressed by bringing jurors and witnesses in through alternate entrances, where there may be reasonable buffer zones enacted, however such buffer zones should be limited to 25 feet on either side of the rear entrance to the courthouse.

3.      If there is a specific finding that it is impossible for a juror or witness to enter the courthouse through the back entrance, perhaps then, law enforcement may be called to require that demonstrators face away from the courthouse for the few seconds it takes for that person to enter the courthouse, and then the demonstrators may continue un-restricted once that affected person has entered or exited the building. However, to prevent abuse of this narrowly tailored restriction, there should be a specific factual finding as to why it would be impossible to use the back door, rather than the public facing door to the courthouse.

Since Judge Cannone did not endeavor to properly narrow her order, it should be enjoined. Perhaps then she may take the opportunity to narrow it. Until then, the content discriminatory order is unconstitutional and the Second Prior Restraint Order must be enjoined.

### 3.2.2   Judge Cannone's Order Constitutes a Prior Restraint

"The principal purpose of the First Amendment's guaranty is to prevent prior restraints." *In re Providence Journal Co.*, 820 F.2d 1342, 1348 (1st Cir. 1986). The Norfolk County Superior Court created a "Prior Restraint Zone" prohibiting all demonstrations (without defining that term) in a vaguely-defined area, but clearly encompassing a broad swath of traditional public forums. It did so without considering arguments that could have helped tailor the relief when it gave no

opportunity to hear to those who would be directly impacted by the Prior Restraint Zone.

When, as here, a prior restraint impinges upon the right of the public to speak, and forbids pure speech, not speech connected to any conduct, "the presumption of unconstitutionality is virtually insurmountable." *In re Providence Journal Co.*, 820 F.2d 1342, 1348 (1st Cir. 1986). If a court wishes to take away the right to protest, it may not do so without at least entertaining protesters' arguments to the contrary.

"The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." *In re Oliver*, 333 U.S. 257, 271 (1948). "Without publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account." *Id.* In this case, the media (aside from one outlet) has been largely absent from performing its Fourth Estate function, but demonstrators have taken up that slack. Judge Cannone's actions, especially the way its order was crafted, create at least the impression to the public that it was not done for the stated reasons, but rather to insulate itself from publicity and meaningful criticism.

When a trial court tries to take away First Amendment rights *in its very realm – the courthouse itself*, the Supreme Court requires that it make specific findings justifying closure. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 558 (1980). Here, Judge Cannone went beyond her realm of the courthouse, and issued an order that purports to restrict speech in a traditional public forum. Where the government seeks to shut down traditional public forums, in the absence of statutory authority upon which it could be based, the case law is not as rich with cases on point. This may be because it has been obvious that a judge lacks authority to issue an order regulating conduct of parties that are not before it, on land that the court itself does not control. This appears to be a case of first impression, where a court seeks to extend its tentacles outside of its realm (the

Memorandum of Law in Support of Plaintiff's Motion for a
Temporary Restraining Order and for a Preliminary Injunction

courthouse) and ensnare *all demonstrations* on property it does not control including traditional public forums and even private property. There are cases discussing *legislative* authority over such areas, such as *Cox v. Louisiana,* 379 U.S. 536 (1965). But despite a good faith effort to find one, Plaintiffs' counsel is unable to find a single case where a Court purported to command contempt authority over demonstrators outside the courthouse grounds.

Our Constitution rarely, if ever, tolerates a prior restraint. "Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 530, 559 (1976). "The Supreme Court has roundly rejected prior restraint." *Kinney v. Barnes*, 443 S.W.3d 87, 91 n.7 (Tex. 2014) (citing Sobchak, W., *The Big Lebowski*, 1998). Prior restraints "bear a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *In re Providence Journal Co.*, 820 F.2d 1342, 1348 (1st Cir. 1986) (same).

The *Spicuzza* Court asserted that the first order was not a prior restraint because it viewed the restriction as merely a content neutral time/place/manner restriction. 494 Mass. at 1008. As it is a content-based restriction, this Court should not compound the *Spicuzza* Court's error. Judge Cannone's order is a prior restraint. Plaintiffs have never threatened anyone or shown a scintilla of violent behavior, nor engaged in any conduct that would warrant a prior restraint. Absent any justification, the prior restraint must be enjoined.

### 3.2.3    Plaintiffs Deserved Due Process – It Was Denied

It is an affront to due process that a court can deprive hundreds of people of their First Amendment rights without an opportunity to be heard. Judge Cannone had no authority to issue her Second Prior Restraint Order. She cited to no violation by Plaintiffs (nor anyone else) of any

law or rule and she arbitrarily determined that Plaintiffs' statements (which she likely was not even aware of) warranted a prior restraint, measured against no regulation.

Judge Cannone's order was issued without jurisdiction over Plaintiffs, *ex parte,* and without authority. Judge Cannone has no authority outside the courthouse complex. In Massachusetts, "Inherent powers of the courts are those 'whose exercise is essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases.'" *Brach v. Chief Justice of the Dist. Court Dep't*, 386 Mass. 528, 535 (1982), quoting *Sheriff of Middlesex County v. Commissioner of Correction*, 383 Mass. 631, 636 (1981). "The inherent authority of the judiciary 'is not limited to adjudication, but includes certain ancillary functions, such as rule-making and judicial administration, which are essential if the courts are to carry out their constitutional mandate.'" *Opinions of the Justices*, 372 Mass. 883, 892-93 (1977) quoting *O'Coin's, Inc. v. Treasurer of the County of Worcester*, 362 Mass. 507, 510 (1972). Controlling traditional public fora (sidewalks) and private property is not essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases, else such orders would've been commonplace for centuries. Nor is it part of the ancillary functions. Judge Cannone undertook land-use regulation, the province of the legislature or town. The *Spicuzza* Court failed to even address the lack of authority Judge Cannone commanded over non-parties on traditional public fora and private property.

Most importantly, no procedures are in place to have contested the order. There was no meaningful opportunity to be heard— it was issued on an *ex parte* basis. *Ex parte* communications can "shadow the impartiality, or at least the appearance of impartiality," of a proceeding and "may, in some circumstances, constitute a deprivation of due process of law." *Grieco v. Meachum*, 533 F.2d 713, 719 (1st Cir. 1976), cert. denied, 429 U.S. 858 (1976), *overruled on other grounds by*

Memorandum of Law in Support of Plaintiff's Motion for a
Temporary Restraining Order and for a Preliminary Injunction

*Maine v. Moulton*, 474 U.S. 159 (1985). Here, Judge Cannone only heard from the Commonwealth and gave no opportunity to any potentially affected person to be heard. In fact, history shows she flatly denies intervention to be heard to those who would be affected. And, as for the individuals who attempted to intervene and oppose the buffer zone order in the first trial, the Massachusetts Supreme Judicial Court even determined that denying intervention was not something they would consider. *Spicuzza,* 494 Mass. at 1007. The *Spicuzza* Court was glaringly silent on the question of due process. Thus, the *ex parte* motion by the Commonwealth denied Plaintiffs their due process.

It is fundamental that a court cannot bind non-parties who are not brought within the court's jurisdiction. As the First Circuit observed:

> a federal court will not impose judgment on a party that is not offered the opportunity to defend itself. *Lambert*, 355 U.S. at 228. The idea that process is not only due but must be duly provided is so "universally prescribed in all systems of law established by civilized countries," *Twining v. New Jersey*, 211 U.S. 78, 111 (1908), that courts have only seldom to remind litigants that such is the case. *See, e.g., Brown v. American Nat. Bank*, 197 F.2d 911, 914 (10th Cir. 1952) ("It is a familiar rule of frequent enunciation that judgment may not be entered with binding effect against one not actually or constructively before the court."); *Bronco Wine Co. v. Frank A. Logoluso Farms*, 214 Cal. App. 3d 699, 717 (1989) ("Rendering a judgment for or against a nonparty to a lawsuit may constitute denial of due process under the United States and California Constitutions. . . . Notice and a chance to be heard are essential components to the trial court's jurisdiction and for due process. Without jurisdiction over the parties, an *in personam* judgment is invalid."); *Demoulas v. Demoulas*, 428 Mass. 555, 591 (1998) ("The judge did not have jurisdiction over nonparties, and we cannot make awards in favor of nonparties. .").

*Wilson v. Town of Mendon*, 2002 U.S. App. LEXIS 4352, *17-19 (1st Cir. Mar. 19, 2002). Here, Plaintiffs were never brought within Judge Cannone's jurisdiction and her order cannot bind them.

The order's vagueness further evidences a deprivation of due process. The order, like any regulation, must define the offense with sufficient definiteness so that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A great degree of

specificity and clarity of such notice and restriction is required when First Amendment rights are at stake. *Gammoh v. City of La Habra*, 395 F.3d 1114, 1119 (9th Cir. 2005); *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1057 (9th Cir. 1986). A regulation is vague if it either fails to place people on notice of exactly which conduct is prohibited, or if the possibility for arbitrary enforcement is present. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). Here, there was not even a regulation allegedly violated.

The Second Prior Restraint Order is a vague, unconstitutional regulation. Government regulations which rely on a viewer's subjective interpretation of facts are void for vagueness. *Morales*, 527 U.S. at 56-64 (holding a provision criminalizing loitering, which is defined as "to remain in any one place with no apparent purpose," void for vagueness because the provision was "inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene"); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 554-55 (9th Cir. 2004) (holding a statute requiring physicians to treat patients "with consideration, respect, and full recognition of the patient's dignity and individuality" void for vagueness because it "subjected physicians to sanctions based not on their own objective behavior, but on the subjective viewpoint of others").

*Morales* provides a useful guidepost for when enforcement of a statute or regulation may be unconstitutionally vague:

> If the police are able to decide arbitrarily which members of the public they will order to disperse, then the Chicago ordinance becomes indistinguishable from the law we held invalid in *Shuttlesworth v. Birmingham*, 382 U.S. 87, 90 (1965). Because an officer may issue an order only after prohibited conduct has already occurred, it cannot provide the kind of advance notice that will protect the putative loiterer from being ordered to disperse.

527 U.S. at 58-59. Here, Plaintiffs have no precise ability to know whether their speech is prohibited. Is a sign saying "Judge Cannone likes Pineapple on Pizza" prohibited? The order is vague and subject to arbitrary and discriminatory enforcement.

The Order *seems* so transparently invalid that demonstrators of extraordinary firmness *might* simply ignore it, relying on *In re Providence Journal Co.*, 820 F.2d 1342, 1347 (1st Cir. 1986):

> "An order entered by a court clearly without jurisdiction over the contemnors or the subject matter is not protected by the collateral bar rule. Were this not the case, a court could wield power over parties or matters obviously not within its authority - - a concept inconsistent with the notion that the judiciary may the judiciary may exercise only those powers entrusted to it by law."

However, in that landmark case, the Providence Journal did not face being thrown into a jail cell for ignoring a patently unconstitutional order. Plaintiffs certainly could. They should not be forced to violate the Order, get locked up, and *then* challenge the contempt. This Court should rein in Judge Cannone. Thus, the issuance of the Second Prior Restraint Order violates Plaintiffs' 14th Amendment right to due process and warrants injunctive relief.

### 3.3 There is Irreparable Injury That Will Continue if Not Enjoined

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). When a plaintiff seeks injunctive relief for "an alleged violation of First Amendment rights, a plaintiff's irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Assn'n of Club Owners and Fraternal Srvs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Thus, if the plaintiff demonstrates a likelihood of success on the merits of its First Amendment claim, they necessarily also establish irreparable harm. *Fortuño, 699 F.3d at 15*.

Judge Cannone deprived Plaintiffs of their First Amendment rights by banning them from speaking in a traditional public forum, and Plaintiffs fear enforcement by the Dedham police and Norfolk District Attorney. Thus, Plaintiffs will be irreparably harmed absent injunctive relief.

### 3.4 The Balance of Equities Tips in Plaintiff's Favor

When the government restricts First Amendment rights, the balance of hardships weighs in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. supp. 2d 244, 251 (D.P.R. 2002) (holding that "insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech").

The balance of equities tips in Plaintiffs' favor. Failing to grant the injunction will continue to deprive them of their constitutional rights pursuant to the First and Fourteenth Amendments. Defendants will suffer no harm if Plaintiffs are granted the requested injunctive relief. Rather, an injunction will merely restore the rights guaranteed by the U.S. Constitution. A temporary restraining order, to be converted into a preliminary injunction must issue.

### 3.5 Injunctive Relief is in the Public Interest

The public interest "favors protecting First Amendment rights." *Kelly v. City of Parkersburg*, 978 F. Supp. 2d 624, (S.D. W.V. 2013); *see also Carey v. FEC*, 791 F. Supp. 2d 121, 135-36 (D. D.C. 2011); *Mullin v. Sussex Cnty., Del.*, 861 F. Supp. 2d 411, 428 (D. Del. 2012). The public interest is served by issuing an injunction where "failure to issue the injunction would harm the public's interest in protecting First Amendment rights in order to allow the free flow of ideas." *Magriz v. union do Tronquistas de Puerto Rico, Local 901*, 765 F. Supp. 2d 143, 157 (D.P.R. 2011) (citation omitted). Moreover, the unconstitutional actions here harms nonparties to the case because they limit or infringe upon their rights. *See Wolfe Fin. Inc. v. Rodgeres*, 2018 U.S. Dist. LEXIS 64335, at *49 (M.D. N.C. April 17, 2018) (*citing McCarthy v. Fuller*, 810 F.3d 456, 461

Memorandum of Law in Support of Plaintiff's Motion for a
Temporary Restraining Order and for a Preliminary Injunction

(7th Cir. 2015). Nor is there any harm to the interests of justice and a fair trial; demonstrations are not uncommon without such restrictions and a jury can be properly instructed. Thus, the public interest weighs in favor of enjoining the Second Prior Restraint Order.

### 3.6    At Most, a Minimal Bond Should Be Required

Rule 65 provides that a court cannot enter injunctive relief unless the moving party "gives security in the amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In other words, a bond should only be required if the enjoined party will suffer any harm from the issuance of the injunction. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002).

Defendants will suffer no damages if the Court issues the requested injunction, which will simply allow the free exercise of constitutional rights. All that the injunction will do is repair the *status quo*. For this reason, Plaintiffs request that the injunction issue with no bond required. If a bond is required, Plaintiffs request that it be a token of $1.

### 4.0    Conclusion

Plaintiffs wish to be heard. The Court should enter a preliminary injunction against the Defendants, enjoining the Second Prior Restraint Order and preventing them from taking action against Plaintiffs on account of such and from taking any action to try to apply that order. Specifically, they should be enjoined from threatening or imposing criminal sanctions or civil sanctions, or contempt sanctions against speech that only violates the Second Prior Restraint Order.

Should the Court decline to enter such injunction, Plaintiffs request alternative relief in the form of an injunction pending appeal. Fed. R. Civ. P. 62(d).

Dated: April 1, 2025.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
Jay M. Wolman, BBO# 666053
jmw@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Mark. Trammell
(*Pro Hac Vice* Forthcoming)
Center for American Liberty
P.O. Box 200942
Pittsburgh, PA 15251
Tel: (703) 687-6200
MTrammell@libertyCenter.org

*Attorneys for Plaintiffs.*