UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON GRANT, ALLISON TAGGART, LISA PETERSON, and SAMANTHA LYONS,<br><br>Plaintiffs,<br><br>v.<br><br>TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS, BEVERLY J. CANNONE, in her official capacity as Justice of the Superior Court, GEOFFREY NOBLE, as Superintendent of the Massachusetts State Police; MICHAEL d'ENTREMONT, in his official capacity as Chief of the Police Department of the Town of Dedham, Massachusetts, and MICHAEL W. MORRISSEY, in his official capacity as the Norfolk County District Attorney,<br><br>Defendants. | Civil Action No. 1:25-cv-10770-MJJ |

## SUPPLEMENTAL BRIEF

At the hearing on April 4, 2025, the Court invited supplemental briefing on the motion for a temporary restraining order/preliminary injunction (ECF No. 2), as to the level of constitutional scrutiny to be utilized to analyze Judge Cannone's buffer zone order and "anything else" the parties wished to add, "as long as it's not duplicate." (Transcript, ECF No. 31 at 26:20-27:21). As set forth in the prior arguments and below, the requested injunctive relief should be granted.

**1.0   Anti-Injunction, Abstention, and Comity Concerns are Misplaced**

The Court understandably seemed trepidatious about turf issues when it comes to what an injunction might look like. Specifically, the Court raised questions regarding the Anti-Injunction Act, *Younger* abstention, and *Rooker*-*Feldman* abstention. (ECF No. 31 at 8:14-23). None of these doctrines stand in the way, and there is case law directly on point that specifically approves of what the Plaintiffs are asking for. *See Mitchum v. Foster*, 407 U.S. 225 (1972).

The Anti-Injunction Act prohibits federal courts from granting injunctions "to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. However, as the court will recall, the defense was candid with the court – since this is a Section 1983 action, the Anti-Injunction Act does not apply. (ECF No. 31 at 16:5-10). The defense was likely familiar with *Mitchum* which held that Section 1983 expressly authorizes federal courts to issue injunctions in state proceedings, because the purpose of Section 1983 is to "interpose the federal courts between the States and the people" and to enforce the Fourteenth Amendment against state action, "whether that action be executive, legislative, or judicial." 407 U.S. at 240. The *Mitchum* court recognized that the legislative history of Section 1983 demonstrates congressional distrust of state courts, which were often "in league with those who were bent upon abrogation of federally protected rights" *Id*. at 240-241. The federal district court in *Mitchum* lawfully enjoined a Florida restraining order that violated Mr. Mitchum's First and Fourteenth Amendment rights. This is exactly what this Court should do here. It should issue an order that the order creating the Prior Restraint Zone or Buffer Zone was issued unconstitutionally in violation of the Fourteenth Amendment and it functions as a violation of the First Amendment, thus it is federally enjoined.

As the First Circuit recognized, even if there were no *Mitchum*, the Anti-Injunction Act does not apply if the party requesting injunctive relief from the federal court was neither a party, nor in privity with a party, to the state court proceeding sought to be enjoined. *Casa Marie, Inc. v. Superior Court of P.R.*, 988 F.2d 252, 264 (1st Cir. 1993) (citing *County of Imperial v. Munoz*, 449 U.S. 54, 59-60 (1980); *Hale v. Bimco Trading, Inc.*, 306 U.S. 375, 378, (1939); *Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 440, (1934); *Garcia v. Bauza-Salas*, 862 F.2d 905, 909 (1st Cir. 1988)). This is referred to as the "strangers to the state court proceedings" exception to

the Anti-Injunction Act. The *Casa Marie* case dealt with a precise question that this Court asked during oral argument about whether the Plaintiffs needed to first seek state court remedies.

> "*The 'strangers' exclusion presumably embraces federal plaintiffs who deliberately bypass an available opportunity to intercede in pending state court proceedings, since 'the law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger.*'"

988 F.2d at 264.

The case that *Casa Marie* relied on for this proposition was *Chase Nat'l Bank*, 291 U.S. at 441. In that case, the Supreme Court noted that even if under state practice it would have been *possible* for the party seeking to intervene, there was no need to. *Chase* was even more extreme than here, as the plaintiff in that case sought an injunction against a state court *judgment,* not just against an improper order. Since the judgment affected a nonparty's rights, the Supreme Court recognized the precise arguments Plaintiffs make in this case: They were strangers to the proceedings before Judge Cannone, thus the prior restraint she issued on the public sidewalks should not affect their legal rights. *Id*.

Defense counsel continued to act with professionalism and candor by conceding that *Rooker-Feldman* does not apply, either. (ECF No. 31 at 16:11). They were correct, as that doctrine is "confined to cases…brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "*Rooker-Feldman* does not bar actions by a nonparty to the earlier state suit." *Lance v. Dennis*, 546 U.S. 459, 464 (2006), citing *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994). Plaintiffs are not parties to the Karen Read trial. This doctrine is inapplicable.

As to the *Younger* abstention doctrine, it, too, does not apply, notwithstanding the defense's honest mistake in saying that it "kind of does[.]" (ECF No. 31 at 16:12). In *Younger v. Harris*,

RANDAZZA | LEGAL GROUP

401 U.S, 37 (1971), the defendant was prosecuted under a state law he believed violated his First Amendment rights and sought a federal injunction against his criminal case. The Supreme Court found that since Mr. Younger could raise his constitutional defenses in his case in state court, the federal court should abstain from intervention. *Id*. at 53-54. *Younger* clearly does not apply here, since not only are Plaintiffs not seeking to enjoin the ongoing prosecution, but merely the unlawful declaration of a Prior Restraint Zone, and they are strangers to the criminal proceeding. *Younger* abstention only applies "when litigation between the same parties and raising the same issues is . . . pending in a state court." *Trainor v. Hernandez*, 431 U.S. 434, 440 (1977); *see also Sullivan v. City of Pittsburgh*, 811 F.2d 171, 177-78 (3d Cir. 1987) (federal plaintiffs not parties to ongoing zoning proceeding, and thus found not sufficiently "related" to parties therein), cert. denied, 484 U.S. 849 (1987); *Family Div. Trial Lawyers v. Moultrie*, 725 F.2d 695, 702-03 (D.C. Cir. 1984) (lawyers' federal claims cognizable in federal court where lawyers were not parties to state proceedings). While *Younger* abstention might apply to "closely related" parties, it does not apply where there is merely an "alignment of interests among similar but distinct parties[.]" *Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 42-43 (1st Cir. 2012). And, here, there is not even a party in the state case with whom Plaintiffs are aligned—Ms. Read expressly took no position on the buffer zone. Thus, in no way, does *Younger* abstention "kind of" apply.

      No other principle of comity interferes to preclude this Court from acting. In their opposition brief, the defense cited only to *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010). (ECF No. 10 at 18). However, *Levin* was about state tax administration and appears cabined to such cases, rendering it inapt. In *Am. Trucking Ass'ns v. Alviti*, 944 F.3d 45, 57 (1st Cir. 2019), the First Circuit stated, that the "comity principle…can be traced to Justice Field's opinion in *Dows v. City of Chicago*, 78 U.S. (11 Wall.) 108, 109-10 (1870)." That is, *Dows* merely provides for

comity when a challenge is made under Section 1983 to "any state tax system[.]" *Excellence Mgmt. Audits & Realty Corp. v. United States*, 812 F. Supp. 2d 126, 132 (D.P.R. 2011). Unlike in a tax case, plaintiffs cannot sue to recover any improperly collected tax—their First Amendment injuries are irreparable and injunctive relief is necessary and proper.

General, vague, reference to comity is otherwise unwarranted. The Government claims that the state court "carefully and cautiously considered the relevant facts." (ECF No. 21 at 18). This is demonstrably not the case. In *Mitchum*, the Supreme Court recognized the congressional intent in passing Section 1983 and ensuring that federal courts could bypass state courts who were often "in league with those who were bent upon abrogation of federally protected rights." 407 U.S. at 240-241. The *Mitchum* court was not specific about what "in league" means, but this clearly does not require a conspiracy – merely aligned governmental interests. Judge Cannone prohibited the Plaintiffs from continuing to criticize her in her self-declared zone of power – power she does not have. And she has enlisted co-defendants in law enforcement to crack down on protesters, which the State Police thus far have done with great alacrity and aggression. Cannone's proceeding only "considered" cherry-picked facts, such as the affidavit of an anonymous alleged juror, who did not merely come forward out of a sense of civic duty – but was the hand-picked jury foreman in the first Karen Read trial, and who other jurors have claimed was blinded by pro-prosecution bias from the day he was chosen.[1]

Judge Cannone also considered "facts" that have nothing to do with the stated reason for the Prior Restraint. For example, while she made it clear that she would *never* let protesters

---

[1] In an interview by another juror, that juror said that the only awareness jurors had of the crowds outside was when Karen Read was entering or leaving the courthouse, but it was "not distracting" during deliberations. Turtleboy Live, "Karen Read Trial Juror: *Exclusive* Live Interview" YouTube, 15 Feb. 2025, https://www.youtube.com/live/8pDwEJTIH4E, at 2:08:45.

intervene to be heard in her courtroom, she considered an email from the "Karen Read Trial Prepare Together Group" (whatever that is) which simply is a bullet point list of hearsay complaints from neighbors about the inconvenience of the presence of protesters. ECF No. 22 pp 58-60. Not one complaint had anything to do with the trial, but just people who prefer to have no protesters on the streets. The fact that this list of irrelevant grievances was considered at all shows that there was neither "care" nor "caution" put into the decision to suspend the First Amendment. Judge Cannone seemingly did not want people, like Plaintiffs, holding up signs that criticize her during the highly publicized trial, and it looks like she used a pretext to shut down that criticism.

The law enforcement defendants seem to have varying degrees of enthusiasm about using the Prior Restraint Zone Order as a reason to shut down dissent, with the Massachusetts State Police, and especially Sgt. Hardman both using it to eject protesters and journalists as well as a pretextual reason by at least one officer to physically assault individuals inside the zone. *See Derosier, et al. v. Noble, et al.*, Case No. 1:25-cv-10812-DJC (D. Mass.) and *Delgado v. Noble, et al.*, Case No. 1:25-cv-10818-RGS (D. Mass.). Comity is, therefore, neither warranted or appropriate. This Court has the power to, and should, issue an injunction that the "Buffer Zone" order is unlawful, was issued in violation of the 14th Amendment, and is therefore enjoined. The Court similarly has the power to issue an injunction that the "Buffer Zone" violates the First Amendment, and is therefore enjoined. And without a doubt, this Court has the power to enjoin law enforcement from enforcing the Buffer Zone Order anywhere outside the Norfolk County Courthouse, even if the Court decides to leave the Order intact, which it should not.

**2.0  State Court Remedies**

At oral argument, the Court was interested in whether state court remedies had been exhausted, and the government argued that there were such remedies. (ECF No. 31 at 21:2-20 &

25:21-24). However, the government is confused. There is no adequate state court remedy, and this issue is closely intertwined with the lack of any abstention impediments. *Chase Nat'l Bank*, 291 U.S. at 441, as discussed above, is controlling.

All the defense pointed to was a hearing before Judge Cannone on the Commonwealth's motion for the buffer zone, citing to a *Court TV* YouTube video. That video is not properly before the court, but evidentiary issues aside, it fails to support the defense. In the video, the Commonwealth argued its motion and Ms. Read declined to take a position. The public was not invited to argue the motion nor to present any evidence, cross examine witnesses, nor to be heard at all. Plaintiffs were certainly not invited to be heard. Judge Cannone marked a letter full of hearsay statements purporting to be from local business owners as an exhibit, but she did not receive it in evidence nor allow them to intervene.[2] Thus, there was no opportunity to be heard.

Even if under Massachusetts practice it would have been *possible* for the Plaintiffs to intervene, *which they are prohibited from doing*, there is no reason for them to have done so before coming to this Court. The Plaintiffs were strangers to the proceedings before Judge Cannone, and thus had neither the right to intervene, nor to seek extraordinary relief before the SJC. To the extent they had even an ephemeral opportunity to, there was no need to. "'*the law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger.*" *Chase Nat'l Bank*, 291 U.S. at 441.

As the Government notes in its brief, in the first Karen Read trial, the *Spicuzza* parties attempted to intervene in the state court. (ECF No. 21 at 2). However, Judge Canonne refused to permit intervention. *Id*. She refused to even *consider* the points raised by protesters. For the Defense to suggest that this option was open to the plaintiffs *now* seems odd. This option was

---

[2] ECF No. 1-4 at 3 n.2

clearly closed to them. As the Commonwealth successfully argued to the SJC, "[i]ntervention is 'a concept foreign to criminal procedure.'" *Spicuzza v. Commonwealth*, SJC-13589 (Red Brief at 29-30 quoting *The Republican Company v. Appeals Court,* 442 Mass. 218, 227 n.14 (2004)). Where there is no right to intervene in a criminal case, the only option open is to seek "extraordinary relief" under Mass. Gen. Laws c. 211 § 3. As the Defense wrote in its brief, even *that* avenue was not entirely open. "Characterizing the Superior Court's decision on the motion to intervene as an 'ordinary procedural ruling,' he concluded that it did not warrant the exercise of the SJC's extraordinary power of superintendence." (ECF No. 21 at 3).

Then, when the merits were finally addressed in *Spicuzza*, the SJC ***explicitly refused to consider the issue of whether public sidewalks were at issue in the case***. 494 Mass. 1005, 1008 (2024). In doing so they left the entire question about public sidewalks open for this Court to consider, and did not occupy one solitary piece of sidewalk pavement in *Spicuzza*. This current case before the Court is entirely and explicitly all about public sidewalks – giving it no intersection at all with *Spicuzza*. *Spicuzza* is not even persuasive.

Accordingly, a motion to intervene in the trial court was not an option open to the Plaintiffs, as discussed at oral argument. A petition for "extraordinary relief" was *an option*, but it was a very murky and unreliable option – the SJC had no compulsion to even *hear* the petition, it is merely a "discretionary power of review[.]" *McGuinness v. Commonwealth*, 420 Mass. 495, 497, (1995). If it did choose to hear the petition, it would have had no timeline to issue its decision – and it very well could have sat on the docket until the Karen Read trial was over, thus mooting the issue. And even if it heard it, it was under no compulsion to hear *both* questions in this case – as it simply refused to address the due process issue raised in the *Spicuzza* case.

Plaintiffs had no *right* to address this matter through state courts. The Plaintiffs are not parties to *Commonwealth v. Karen Read*, so intervention and appellate review were foreclosed. There was no requirement to seek relief in the state courts first, and state court remedies are otherwise inadequate. Under *Chase Nat'l Bank*, state court remedies are not relevant here.

### 3.0   Strict Scrutiny Applies

The Court requested specifically that the parties address the level of scrutiny it should apply to the speech restrictions – and it is clear that strict scrutiny applies. However, the Court should recall that this is only an *in the alternative* analysis. The Order, even if completely respectful of the First Amendment, was arrived at and imposed in violation of the Fourteenth Amendment's due process requirements, and thus would be invalid even if drafted with precision and perfection and enforced just as cleanly. Unfortunately for open and robust debate, it was not so crafted and has not so been enforced.

The first step for the Court is to determine whether this is a traditional public forum or not, but it hardly seems worth briefing given the answer is so obvious. Sidewalks, including sidewalks around courthouses, are traditional public forums. From "time out of mind public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum." *Frisby v. Schultz*, 487 U.S. 474, 480 (1988); *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 817 (1985); *United States v. Grace*, 461 U.S. 171, 177 (1983), quoting *Perry Education Assn. v. Perry Local Educator's Assn.*, 460 U.S. 37, 45 (1983). Public streets and sidewalks, "are presumptively traditional public forums, and the Supreme Court has repeatedly reaffirmed their status as places for expressive activity." *Watchtower Bible & Tract Soc'y of N.Y., Inc v. Jesus*, 634 F.3d 3, 11 (1st Cir. 2011). In *United States v. Grace*, 461 U.S. 171, 179-80 (1983), the Supreme Court held that the "sidewalks forming the perimeter of the Supreme Court

grounds" are traditional public forums, places where expressive activity is lightly regulated, because they are "indistinguishable from any other sidewalks in Washington, D.C." In other words, Congress tried to protect the Supreme Court from protests, and the Supreme Court itself struck down Congress' attempts to do so. If the Supreme Court can tolerate protests, the Norfolk Superior Court can do so as well.

Having resolved that we are in a traditional public forum, the Court should move on to assess the appropriate level of scrutiny to apply. First, we measure the government's power, and that power to regulate speech is at its absolute weakest level in traditional public forums like sidewalks. The government "must respect the open character of these for[a]." *Oberwetter v. Hilliard*, 639 F.3d 545, 551 (D.C. Cir. 2011); *Grace*, 461 U.S. at 177 (in a traditional public forum, "the government's ability to permissibly restrict expressive conduct is very limited").

The government's already weak power here is even more eroded by the fact that the illegally imposed restrictions are indeed content-based. Content-based restrictions on expressive activities in such fora must pass strict scrutiny — *i.e.,* "the restriction must be narrowly tailored to serve a compelling government interest." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009). The Government argues that the Order is content neutral, but they confuse viewpoint neutrality with content neutrality. The order itself does regulate content – *demonstrations*. Speech that is of a commercial nature? Allowed. Speech that shows a brand preference, like Under Armour, or shows off your employer? Allowed:[3]

---

[3] Image via 12 News, WPRI Reporter Hannah Cotter, available at https://www.instagram.com/hannahecotter/reel/DH6fQA1RQ4R/ (posted April 1, 2025).



The only content that is restricted is a "demonstration." That is a content-based restriction. Further, to whatever extent the Order itself might have a slight faux veneer of neutrality, it was imposed for the purpose of stifling Anti-Government speech, and law enforcement so far has only interpreted this Order (and the prior Order too) to encompass Anti-Government speech. When, as here, a prior restraint impinges upon the right of the public to speak, and forbids pure speech, not speech connected to any conduct, "the presumption of unconstitutionality is virtually insurmountable." *In re Providence Journal Co.*, 820 F.2d 1342, 1348 (1st Cir. 1986).

However, the Court might not need to resolve the dispute over whether it discriminates on the basis of viewpoint *or* content, because it is a near-total ban on expression here that would fail under any standard because it is not at all tailored, much less narrowly tailored. If the government is to be believed in its position that the restriction is not content-based, because it just simply bans *everything,* then the government jumps from the frying pan into the fire. The ban is then properly

described as a categorical prohibition on all expressive activity, which "would likely not pass constitutional muster even under the relaxed standard applicable to a nonpublic forum." *United States v. Nassif*, 97 F.4th 968, 980 (D.C. Cir. 2024); *see also Lederman v. United States*, 291 F.3d 36, 44 (D.C. Cir. 2002).

If the government's position is credited, the ban is so draconian that it bans all noncommercial expressive activity, which makes it wildly overinclusive. *See Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 121-23 (1991) (law that is "significantly overinclusive" is not narrowly tailored). The ban prohibits one from engaging in pamphleteering regarding jury nullification in general, not targeting any particular case, despite this being protected speech. *See Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) (finding such pamphleteering protected). As in a recent case involving Congress, the restriction prevents even a single person from standing with a black and white placard that might say "Do Justice." *See Mahoney v. United States Capitol Police Bd.*, 734 F. Supp. 3d 114, 130 (D.D.C. 2024). And just as in *Mahoney*, "it beggars belief" that a complete lockdown on all expressive activity is necessary to address the concerns that seem to be raised – namely nothing more than noise. *See Bd. of Airport Comm'rs of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 574-75, (1987) (ban on "all First Amendment activities" not narrowly tailored as "no conceivable governmental interest would justify such an absolute prohibition on speech") (cleaned up).

The Order suffers from the opposite problem as well, as it is underinclusive. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011) ("Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint"). The only real complaint that anyone seems to have in the record or at oral argument was that there is a claim that jurors could hear people yelling outside the courthouse. If

"noise" is really the justification, then why wasn't there simply a "quiet zone." After all, someone could walk down the street with a barking dog, creating a far greater source of jarring noise, but nobody would claim that this violated the Buffer Zone. There is no restriction on motorcycles driving by with loud exhaust pipes, nor is anyone prohibited from driving past the courthouse in a 1969 Camaro with *Free Bird* playing on an 8-track at maximum volume. In fact, it would seem that since only "demonstrations" are prohibited, it would be entirely lawful for a chorus of people to line up near the courthouse for the sole purpose of singing *Free Bird* a capella.

It is unsurprising that the Prior Restraint Zone does not address other sources of noise or disturbance – because the purpose of it is to stifle dissent and to lash out at critics of Judge Cannone, not to stop the proceedings from being disturbed by noise.

What gives this Court its greatest latitude to strike down the Prior Restraint Zone, or at least enjoin its enforcement, is that there are far less restrictive alternatives available to address the claimed concern – noise. In fact, the only case that the Order actually relies on is *Ward v. Rock Against Racism*, 491 U.S. 781, 784, 799 (1989), which upheld a regulation on "the volume of amplified music at the bandshell [amphitheater and stage] so the performances are satisfactory to the audience without intruding upon those who use the [nearby grassy area called] Sheep Meadow or live on Central Park West and in its vicinity." The number of options Judge Cannone had, other than a complete suspension of the First Amendment, seems to confirm that Judge Cannone decided to sacrifice speech by burdening substantially more of it than necessary in pursuit of a stated important goal. Why suppress placards and other quiet forms of protest if the interest is in suppressing noise? Therefore, even if the intent was not to stop people from holding placards criticizing her, and it was an actually noble goal, the analytical laziness of the order spoils it. *See McCullen v. Coakley*, 573 U.S. 464, 486 (2014) ("The government may attempt to suppress speech

not only because it disagrees with the message being expressed, but also for mere convenience. Where certain speech is associated with particular problems, silencing the speech is sometimes the path of least resistance. But by demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily 'sacrific[ing] speech for efficiency'*"); see also Lederman*, 291 F.3d at 45 ("Perhaps the most troubling aspects of the … virtually per se ban on expressive activity … is the ready availability of 'substantially less restrictive alternatives'").

If the true goal of the restrictions is to limit noise, then after a proper hearing and with proper authority, let us see a zone of silence around the courthouse. But one has to ask, "why now?" Why not make it permanent, for every trial? Judge Cannone or her counsel can answer that question. But if the problem here is truly a concern about tainting the jurors, the jurors can certainly be protected from noise while protesters stand quietly with signs outside the building.

The Court should strike down the entire Prior Restraint Zone order. Existing disorderly conduct statutes and noise ordinances are sufficient to deal with any problems that Judge Cannone has identified or imagined.

**4.0    Collapsing the Hearing Into a Trial on the Merits**

The issues in this case are ones of pure constitutional law that do not require any discovery or factual development. In cases such as this, it is appropriate to collapse the hearing on a motion for a preliminary injunction into a trial on the merits. Fed. R. Civ. P. 65(a)(2) provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Such consolidation is appropriate where (1) "the record is complete and ripe for review" and (2) there is "no reason for delay," especially where "the evidence reasonably admits of only one outcome." *Bays' Legal Fund v. Browner*, 828 F. Supp. 102, 105 n.3 (D. Mass. 1993). The unconstitutionality of the Buffer Zone

is so readily apparent that there is no reason the Court cannot determine with finality all issues as part of the hearing on the instant Motion.

Dated: April 10, 2025.                                    Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
Jay M. Wolman, BBO# 666053
jmw@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Mark. Trammell
(*Pro Hac Vice*)
Center for American Liberty
P.O. Box 200942
Pittsburgh, PA 15251
Tel: (703) 687-6200
MTrammell@libertyCenter.org

*Attorneys for Plaintiffs.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2025 the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza<br>
Marc J. Randazza