UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-cv-10770-MJJ

| | |
|---|---|
| JASON GRANT, ALLISON TAGGART, LISA PETERSON, and SAMANTHA LYONS, <br><br> Plaintiffs, <br><br> v. <br><br> TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS, BEVERLY J. CANNONE, in her official capacity as Justice of the Superior Court, GEOFFREY NOBLE, as Superintendent of the Massachusetts State Police, MICHAEL d'ENTREMONT, in his official capacity as Chief of Police Department of the Town of Dedham, Massachusetts, and MICHAEL W. MORRISSEY, in his official capacity as the Norfolk County District Attorney, <br><br> Defendants. | |

**STATE DEFENDANTS' SUPPLEMENTAL
PRELIMINARY INJUNCTION OPPOSITION**

**INTRODUCTION**

Pursuant to the Court's request at the April 4 hearing, the State Defendants submit this supplemental opposition to address several points including, but not limited to, why the buffer-zone order serves the compelling state interest of protecting Ms. Read's right to a fair trial and is narrowly tailored to achieve that compelling state interest.

1

**ARGUMENT**

I. **ENSURING MS. READ'S RIGHT TO A FAIR TRIAL AND AN IMPARTIAL JURY IS A COMPELLING STATE INTEREST THAT SUPPORTS THE NARROWLY-TAILORED, MODEST EXPANSION OF THE BUFFER ZONE.**

As argued in the State Defendants' principal opposition at 10, and assuming without conceding that strict scrutiny applies, the narrowly-tailored buffer-zone order furthers a compelling state interest as required by *Reed v. City of Gilbert, Ariz.*, 576 U.S. 155, 171-172 (2015). The Superior Court established the buffer zone "to ensure the defendant's right to a fair trial." Dkt. 1-4, at 2. The right to a fair trial has long been recognized as a compelling state interest. "Courts have agreed that protecting the right to a fair criminal trial by an impartial jury whose considerations are based solely on record evidence is a compelling state interest." *In re Morrissey,* 168 F.3d 134, 140 (4th Cir. 1999) (citing, among other cases, *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1075 (1991), and *Sheppard v. Maxwell,* 384 U.S. 333, 362 (1966)). *Contrast with McLaughlin v. City of Lowell*, 140 F. Supp. 3d 177, 189 (D. Mass. 2015) (ordinance did not survive strict scrutiny because "promotion of tourism and business has never been found to be a compelling government interest for the purposes of the First Amendment"). Additionally, another judge in this District (Casper, J.), faced with a similar issue relating to the Ms. Read's case, noted that "[t]he Supreme Court has recognized the government's interest in 'protecting its judicial system from the pressures which picketing near a courthouse might create.'" *O'Neil v. Canton Police Dep't*, No. 23-cv-12685-DJC, 2023 WL 7462523, at *4 (D. Mass. 2023) (quoting *Cox v. Louisiana*, 379 U.S 559, 562 (1965)).[1]

---

[1] This is also consistent with the prior state court decisions assessing the former buffer-zone order. When considering the constitutionality of the previous buffer-zone order, the Single

Here, the Superior Court's order, as set forth in the memorandum of decision, Dkt. 1-4, at 2-3, is carefully and narrowly tailored to modestly expand the buffer zone on the west side of the courthouse based on the real-world experience of noise and activity outside the courtroom impacting the sanctity of the deliberations and proceedings inside the courthouse during the first trial. The judge expressly concluded that "[t]o ensure a fair trial with an impartial jury, extending the buffer zone is necessary to prevent jurors from outside influence and to prevent interruptions and distractions during trial." Dkt. 1-4, at 2-3. Here, the Superior Court narrowly tailored its modest extension of the buffer-zone order to prevent noise that might interfere with a jury maintaining their impartiality. Shouting heard inside the courtroom and in the jury room, as well as honking from passing vehicles, reportedly disrupted the jury's deliberations in the first trial. *See Picard v. Magliano*, 42 F.4th 89, 104 (2d Cir. 2022) ("The State would clearly have a compelling interest, for example, in prohibiting protests outside a courthouse featuring amplified calls for the jurors to reach a particular verdict in an ongoing trial in that courthouse that are audible inside the courtroom."). Faced with the unique circumstances presented by the Read case and the experience of what occurred during the first trial, it is hard to envision how the judge could have more narrowly tailored the order to be "the least restrictive means among available, effective alternatives." *Ashcroft v. Am. Civ. Liberties Union*, 542 U.S. 656, 666 (2004). In fact, the judge tried other available alternatives, rejected a broader 500-foot buffer zone that the Commonwealth had requested, and based on the real-world experience of the first trial, determined, in essence, that there were no "effective alternatives" to a modest expansion of the buffer zone to ensure the sanctity of the trial. *Id.* Here, there is a "close fit between the ends

---

Justice of the Supreme Judicial Court stated that "if I were to apply strict scrutiny to the buffer zone order, I would find that the government has a compelling interest in preserving the integrity and fairness of the trial." Dkt. 22, at 22, n.9.

3

[i.e., protecting Mr. Read's right to a fair trial] and the means" [i.e., the modestly expanded buffer-zone order] that ensures that Plaintiffs' First Amendment rights have not been "too readily 'scarific[ed] [] for efficiency.'" *McCullen v. Coakley*, 537 U.S. 464, 486 (2014) (quoting *Riley v. National Federation of Blind N.C., Inc.*, 487 U.S. 781, 795 (1988)).

Furthermore, in addition to the reasoning set forth by the judge in the March 25, 2025, memorandum of decision and order as discussed above, the judge also incorporated the reasons that compelled the judge to enter the buffer-zone order in the first trial. Dkt. 1-4, at 1 (stating that "[f]or the reasons that compelled the Court to establish a buffer zone for the first trial, it is necessary to establish a buffer zone for the second trial to ensure the defendant's right to a fair trial"). Those reasons included, among other things: (1) "Individuals . . . displaying materials which may or may not be introduced into evidence during trial"; (2) "[D]isplaying materials . . . airing their opinions as to the guilt or innocence of the defendant on their clothing or signage"; and (3) "Witness intimidation." Dkt. 1-2, at 2. Again, in light of these additional reasons, it is hard to envision how the judge could have crafted a more narrowly-tailored order.

Additionally, there is no merit to Plaintiffs' argument, which it should be noted is supported by no citations to caselaw, that the judge "could simply instruct the jurors to ignore the demonstrations." Dkt. 3, at 9. For example, such an instruction would not effectively address the problem posed by demonstration-related noise preventing jurors from hearing witness testimony or jury instructions in the courtroom. Likewise, Plaintiffs' argument that curative instructions to the jury could solve the problem, Dkt. 3, at 9-10, also fails to address the real-world problem of jurors not being able to hear witness testimony and jury instructions inside the courtroom.

Additionally, cases cited by Plaintiffs such as *United States v. Grace*, 461 U.S. 171 (1983), are distinguishable from this case. *Grace* dealt with protected speech on public sidewalks bounding the United States Supreme Court plaza. However, unlike in *Grace*, 461 U.S. at 182, there *is* evidence in the record here that demonstrations did interfere with the orderly function of the first Superior Court trial, and in particular, the basic functioning of Ms. Read's first trial.

In sum, for at least the reasons set forth above, the buffer-zone order is narrowly tailored.

## II. ONLY ONE SENTENCE OF THE BUFFER-ZONE ORDER HAS NOT ALREADY BEEN REVIEWED AND UPHELD AS CONSTITUTIONAL BY THE MASSACHUSETTS SUPREME JUDICIAL COURT.

The first buffer-zone order was upheld by the Massachusetts Supreme Judicial Court in *Spicuzza v. Commonwealth*, 494 Mass. 1005 (2024) (per curiam). Except for one sentence, the current buffer-zone order is identical to the one that the SJC upheld. Thus, under the doctrine of comity, this Court should decline to enjoin those portions of the order that the SJC has already reviewed and upheld in connection with Ms. Read's first trial.

The only portion of the buffer-zone order that is new here is the addition of one sentence in the first paragraph of the order: "The buffer zone shall further be extended to include the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street." Dkt. 1-4, at 4. As discussed at the April 4 hearing, these are the streets on the west side of the Dedham courthouse that are referenced in the portion of the Superior Court's decision that explains the judge's reasoning for modestly expanding the buffer zone. In the interest of comity, this Court should not disturb this modest expansion, while there are available state-court remedies for Plaintiffs to challenge the buffer zone. After all, the Single Justice who ruled on the challenge to the buffer zone in Ms. Read's first trial unambiguously stated that "the petitioners [there] ha[d] standing to

5

challenge the buffer zone order pursuant to G. L. c. 211, § 3, where they allege[d] that the buffer zone order infringe[d] their First Amendment rights." Dkt. 22, at 20, n.7. And, on appeal from the Single Justice's order, the full SJC did not signal that the Single Justice's ruling in that regard was wrong. *Spicuzza*, 494 Mass. at 1007. Thus, Plaintiffs here cannot show the lack of at least a potential, if not actual, avenue to give the state courts the first opportunity to review the constitutional questions presented here.

The Supreme Court has cautioned that "[t]he various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex mix of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12 n.9 (1987). Recognizing that "complex mix of considerations," courts have concluded that, even where the formal requirements of an abstention doctrine are not met, relief may be inappropriate when a plaintiff bypasses available state-court remedies to challenge a state court's injunction or order in federal court. *See*, *e.g.*, *Gottfried v. Med. Plan. Servs., Inc.*, 142 F.3d 326, 332-333 (6th Cir. 1998) ("we hold that a federal court should abstain when a nonparty to a state court injunction brings a First Amendment challenge to the injunction in federal court before requesting relief from the state court"; "[e]ven when there are no jurisdictional bars to such extraordinary relief, a federal court should initially abstain and give due respect to the state court's ability to determine the scope of its injunctions within the constitutional framework."); *Hoover v. Wagner*, 47 F.3d 845, 851 (7th Cir. 1995) (Posner, C.J.) ("Taking as true the facts pleaded by the plaintiffs, we hold that it would be an abuse of discretion, in light of the principles of equity and comity that underlie *Younger,* [401 U.S. 37 (1971),] to grant the relief sought by the plaintiffs. Should the plaintiffs ever be arrested or otherwise impeded or punished for the exercise of their right of free speech,

they will have an abundance of state and federal remedies to which to appeal."). These principles apply with equal force here and weigh in favor of declining to grant the requested preliminary relief.

### III. PLAINTIFFS HAVE WAIVED THEIR CHALLENGE TO THOSE PORTIONS OF THE BUFFER-ZONE ORDER THAT CONCERN THE IMPACT OF NOISE ON THE JURY.

During the April 4 hearing, Plaintiffs' counsel waived Plaintiffs' challenge to the portions of the buffer-zone order relating to noise. Dkt. 31, at 26 ("[W]e are waiving any argument that noise is something that we're seeking you to allow us to engage in"). Thus, Plaintiffs' challenge, at most, is now limited to only that portion of the order that would impact Plaintiffs' ability to "stand on public sidewalks [] holding signs." *Id.*, at 25.

### IV. DURING THE FIRST TRIAL, DEMONSTRATORS' "QUIET" HOLDING OF SIGNS AND GESTURES TO OTHERS, INCLUDING DRIVERS OF VEHICLES, DIRECTLY CAUSED NOISE—MOST NOTABLY HORN-HONKING—THAT COULD BE HEARD IN THE COURTROOM AND THE JURY ROOM AND SERVED AS A BASIS FOR THE MODEST EXPANSION OF THE BUFFER-ZONE ORDER.

Plaintiffs fail to grapple with the problem of noise being created in response to Plaintiffs' signs or their physical gestures while they quietly protest. The Superior Court expressly concluded that the modest expansion of the first buffer zone was necessitated by the problem posed by "[v]ehicles honking their horns *in response to signs and gestures from [] demonstrators* [that] could [] be heard frequently during the first trial." Dkt. 1-4, at 3 (emphasis added).[2] Because jurors would be aware that this unusual and incessant honking is a result of strong

---

[2] In its initial buffer-zone order for the first trial, Dkt. 1-2, at 3, and then again in its buffer-zone order for the retrial, Dkt. 1-4, at 3, the Superior Court was also appropriately mindful that even signs held by protesters could affect Ms. Read's right to a fair trial if they were viewed by jurors or witnesses entering or approaching the courthouse, or by such individuals from within the courthouse. Such signs could introduce extraneous influences just like noise. Any argument by Plaintiffs minimizing that risk is unjustified.

outside opinions about the murder trial on which they are sitting, it could affect their ability to be impartial or cause unnecessary disruptions to, or interference with, the ongoing proceedings. *See* Dkt. 22, at 29 (affidavit of anonymous juror from first trial); Dkt. 22, at 31 ("I am frightened for my personal safety as a result of learning that someone associated with this case has been criminally charged with intimidation."); Dkt. 22, at 32 ("If someone is going to attack a sitting judge, I see no reason why they would not demean and attack, verbally and physically, a juror who sat on this jury."), Dkt. 22, at 33-34 (describing actions of journalist who "harass[ed] witnesses to the case, including by organizing crowds of people to harass them outside their homes" and made public statements "to the effect of, murderers, *and those who cover for them*, do not deserve to live a comfortable life while Karen Read suffers and fights for justice for John O'Keefe" (emphasis in affidavit)). Plaintiffs do not even suggest an effective alternative to the modest expansion of the buffer zone to address the problem posed by horn-honking caused by quiet demonstration that interrupted and disturbed the first trial and would likely do so again during the current trial absent the court's modest expansion of the buffer zone. *Ashcroft*, 542 U.S. at 666. Again, the Superior Court chose the narrowest path to protect Ms. Read's right to a fair trial. *McCullen*, 537 U.S. at 486.

## CONCLUSION

For the additional reasons set forth above, this Court should deny Plaintiffs' Motion for injunctive relief.

                    ANDREA JOY CAMPBELL
                    ATTORNEY GENERAL

                    /s/ John R. Hitt

                    Thomas Bocian, BBO # 678307
                    John R. Hitt, BBO# 567235
                    Gabriel Thornton, BBO # 674402
                    Emily Rothkin, BBO # 711591
                    Assistant Attorneys General
                    Office of the Attorney General
                    One Ashburton Place
                    Boston, MA 02108-1698
                    (617) 727-2200
                    thomas.bocian@mass.gov
Dated: April 10, 2025     john.hitt@mass.gov
                    gabriel.thornton@mass.gov
                    emily.rothkin@mass.gov

## CERTIFICATE OF SERVICE

I hereby certify that I have today, April 10, 2025, served this State Defendants' Supplemental Preliminary Injunction Opposition by ECF.

                    */s/ John R. Hitt*
                    Assistant Attorney General
                    Massachusetts Attorney General's Office