UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JASON GRANT, ALLISON TAGGART, LISA PETERSON, and SAMANTHA LYONS, | ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civil Action No. 25-10770-MJJ |
| TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS, BEVERLY J. CANNONE, in her official capacity as Justice of the Superior Court, GEOFFREY NOBLE, as Superintendent of the Massachusetts State Police, MICHAEL d'ENTREMONT, in his official capacity as Chief of Police Department of the Twon of Dedham, Massachusetts, and MICHAEL W. MORRISEY, in his official Capacity as the Norfolk County District Attorney, | ) ) ) ) ) ) ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

**MEMORANDUM AND ORDER ON PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER**

April 11, 2025

JOUN, D.J.

On April 1, 2025, four Massachusetts residents, Jason Grant, Allison Taggart, Lisa Peterson, and Samantha Lyons (collectively, "Plaintiffs") filed suit against defendants Trial Court of the Commonwealth of Massachusetts; Beverly J. Cannone, in her official capacity as Justice of the Superior Court ("Judge Cannone"); Geoffrey Noble, as Superintendent of the

1

Massachusetts State Police; Michael d'Entremont, in his official capacity as Chief of the Police Department of the Town of Dedham, Massachusetts; and Michael W. Morrissey, in his official capacity as the Norfolk County District Attorney (collectively, "Defendants"). [Doc. No. 1]. Plaintiffs allege that Judge Cannone issued a buffer-zone order imposing unconstitutional prior restraint and infringing on their First Amendment and Due Process rights.

Plaintiffs filed a Motion for Temporary Restraining Order, [Doc. No. 2], seeking enjoinment of Judge Cannone's March 25, 2025, order. A hearing was held on April 4, 2025, at 2:30 P.M. The parties completed briefing on April 10, 2025. [Doc. Nos. 35, 36]. Upon consideration of the parties' briefs and supporting evidence, the parties' oral argument, and for the reasons explained below, I <u>DENY</u> Plaintiffs' Motion.

## I.    DISTRICT COURT JURISDICTION

To begin, I am reluctant to chime in on matters within the state court's interests. There are limits to federal jurisdiction as outlined variously in the Anti-Injunction Act, the *Younger* abstention doctrine, and the *Rooker-Feldman* doctrine. *Younger v. Harris*, 401 U.S. 37 (1971); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). At the hearing, counsel for Defendants acknowledged these doctrines may or may not be applicable, while Plaintiffs disputed their applicability to the case at hand. Subsequently, I gave the parties an opportunity to brief these issues.

My review of the doctrines suggests that none of them are applicable under the facts and circumstances of this case, principally because the Plaintiffs are strangers to the state proceeding. However, I recognize that the Supreme Court has held "[t]he various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel

judicial processes." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11–12 n. 9 (1987). Without deciding this jurisdictional tension, I proceed to address the merits of the Plaintiffs' claims.

## II.     TEMPORARY RESTRAINING ORDER

The standard for issuing a TRO—an "extraordinary and drastic remedy"—is "the same as for a preliminary injunction." *Orkin v. Albert*, 557 F. Supp. 3d 252, 256 (D. Mass. 2021) (cleaned up). Plaintiffs must show that weighing the following four interests favors granting a TRO:

> (i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships as between the parties; and (iv) the effect of the court's ruling on the public interest.

*Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009).

### A.  Likelihood of Success

I begin with the likelihood of success on the merits, which is considered the most important of the four elements and the "sine qua non" of the calculus. *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020). Plaintiffs allege that their First Amendment rights were violated by Judge Cannone's second buffer-zone order (the "Second Order") because it is content-based, not narrowly tailored, and constitutes prior restraint. Plaintiffs further argue that the Second Order was issued without a meaningful opportunity to be heard and constitutes a vague unconstitutional regulation. In contrast, Defendants argue that the buffer zone created by the Second Order is a content neutral, time, place and manner regulation, narrowly tailored to serve a significant state interest, and that Plaintiffs' Due Process claim is based on the flawed premise that they were not granted an opportunity to be heard. Based on the evidence before me now, I find that Plaintiffs have not demonstrated a likelihood of success on the merits of their First Amendment and Due Process claims.

1. **First Amendment Claim**

In relevant part, the Second Order states:

> [N]o individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. The buffer zone shall further be extended to include the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street. Individuals are also prohibited from using audio enhancing devices while protesting.

[Doc. No. 1-4 at 4]. The Second Order is almost identical to Judge Cannone's April 4, 2024, order establishing a buffer zone during the first state-court trial in *Commonwealth v. Karen Read*, 2282-cr-00117 (Mass. Sup. Ct.) (the "First Order").[1] In that case, the Massachusetts Supreme Judicial Court ("SJC") held "the trial judge struck a balance between the right to protest or demonstrate and the defendant's right to a fair trial." *Spicuzza v. Commonwealth*, 494 Mass. 1005, 1008 (2024). I agree with the SJC's reasoning and find that Plaintiffs have not demonstrated a likelihood of success on the merits on their First Amendment claim, even despite the extension of the First Order to the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street (the "Extension").

   a. **Constitutional Standard**

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (citing U.S. Const., Amdt. 1). The Supreme Court, however, has "regularly rejected the assertion that people who wish 'to propagandize protests or views have a

---

[1] In relevant part, the First Order states, "[N]o individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. Individuals are also prohibited from using audio enhancing devices while protesting." [Doc. No. 1-2 at 3].

4

constitutional right to do so whenever and however and wherever they please.'" *United States v. Grace*, 461 U.S. 171, 177–78 (1983). "In a traditional or designated public forum, content-neutral restrictions on the time, place, and manner of expression must be narrowly tailored to serve some substantial governmental interest, and must leave open adequate alternative channels of communication." *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 20 (1st Cir. 2002). If the restriction is not content neutral then it "must satisfy strict scrutiny—that is, it must be the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014).

### b. Content Neutrality

The parties do not dispute that the speech at issue is protected by the First Amendment and that the location at issue is a traditional or designated public forum. Instead, they dispute whether the Second Order is content neutral.

Here, the Second Order bars all demonstrations within 200 feet of the courthouse and within the Extension regardless of the subject matter of the demonstration; it "does not draw content-based distinctions on its face." *Coakley*, 573 U.S. at 479. To determine whether a violation of the Second Order has occurred, one need not examine the message conveyed. *Id.* (cleaned up). Rather, "[w]hether [Plaintiffs] violate [the Second Order] 'depends' not 'on what they say,' but simply on where they say it." *Id.* (cleaned up). Significantly, "[a]ny protest against the defendant, and in support of the Commonwealth, would be equally subject to the restrictions of the buffer zone." *Spicuzza*, 494 Mass. at 1008.[2]

---

[2] Plaintiffs are similarly unlikely to succeed in their assertion that the Second Order constitutes prior restraint. I agree with the SJC that there is no prior restraint where "the buffer zone order does not forbid protestors and demonstrators from expressing their chosen message; they simply must do so outside the buffer zone." *Spicuzza*, 494 Mass. at 1008. Similarly, the Second Order does not forbid speech activities, but rather limits where the speech can occur, and thus does not constitute prior restraint. *See Madsen v.*

5

Plaintiffs argue that the Second Order is not content neutral because it specifically prohibits demonstrations; it does not prohibit commercial or other types of speech. Here,

> [t]o accept [Plaintiffs'] claim would be to classify virtually every injunction as content or viewpoint based. An injunction, by its very nature, applies only to a particular group (or individuals) and regulates the activities, and perhaps the speech, of that group. It does so, however, because of the group's past actions in the context of a specific dispute between real parties. The parties seeking the injunction assert a violation of their rights; the court hearing the action is charged with fashioning a remedy for a specific deprivation, not with the drafting of a statute addressed to the general public.

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 762 (1994). Furthermore, nothing in the record indicates that the Second Order has an "incidental effect on some speakers or messages but not others," and even if it did, such effect does not render the Second Order content based. *See Coakley*, 573 U.S. at 479. Thus, I find Plaintiffs are unlikely to succeed on their claim that the Second Order is content based.

### c. Narrowly Tailored to Serve a Significant Government Interest

"Even though the [Second Order] is content neutral, it still must be narrowly tailored to serve a significant governmental interest." *Coakley*, 573 U.S. at 486 (cleaned up). "For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* (cleaned up).

As stated previously, the Second Order encompasses the area established in the First Order. Here, the trial judge reinstated the buffer zone in that area for the same reasons as the first trial. [Doc. No. 1-4 at 2 ("For the same reasons that compelled the Court to establish a buffer zone for the first trial, it is necessary to establish a buffer zone for the second trial to ensure the

---

*Women's Health Ctr., Inc.*, 512 U.S. 753, 763 n.2 (1994) (finding no prior restraint where petitioners were "not prevented from expressing their message in any one of several different ways; they are simply prohibited from expressing it within the 36–foot buffer zone.").

defendant's right to a fair trial.")]. I agree with the SJC's reasoning that the original buffer zone area passes constitutional muster.

> The buffer zone [] will help ensure a fair trial—a significant governmental interest—by physically clearing the path for jurors, witnesses, and other individuals to come and go from the court house complex without obstruction or interference by protestors or demonstrators, and any concomitant intimidation or harassment, within 200 feet of the court house complex. The buffer zone also helps protect the jurors, who, as the trial judge noted, must remain fair and unbiased, from extraneous influence that might result from, for example, viewing pictures of putative evidence directly in their path. The buffer zone does not preclude the petitioners, or anyone else, from engaging in the same forms of protest they have previously done; it simply constrains them from doing so within a limited zone tied to court house property. In so doing, it leaves open ample alternative channels for communication of the information.

*Spicuzza*, 494 Mass. at 1008.

Additionally, the Extension does not "burden substantially more speech than is necessary to further the government's legitimate interest[]"—the defendant's right to a fair trial. *Coakley*, 573 U.S. at 486 (cleaned up); *see also Cox v. State of La.*, 379 U.S. 559, 562 (1965) ("[a] State has a legitimate interest in protecting its judicial system from the pressures which picketing near a courthouse may create," and "it is of the utmost importance that the administration of justice be absolutely fair and orderly."). Judge Cannone found that, during the first trial, the "collective voices of groups of demonstrators gathering outside the buffer zone" and vehicles honking their horns in response to demonstrators "could be clearly heard inside the courthouse" *despite the original 200-foot buffer zone*. [Doc. No. 1-4 at 3]. An anonymous juror from the first trial detailed how they "could hear protesters outside screaming and yelling" from the deliberation room during the first trial. [Doc. No. 22 at 31, ¶ 10]. Where there are groups protesting in front of the courthouse that can be heard in the courtroom, such actions "may be presumed to intend to influence judges, jurors, witnesses, or court officials." *See Cox*, 379 U.S. at 567.

According to an affidavit by Massachusetts State Police Sergeant, Michael W. Hardman, the original buffer zone was sufficient to prevent disturbances from the southern, eastern, and northern sides of the courthouse; however, significant noise and honking originated from the western side of the courthouse, which has larger, open spaces. [Doc. No. 22 at 25–26, ¶¶ 3–4]. Such honking was in response to signs and gestures from demonstrators. [*Id.* at 27, ¶ 6]. As a result, the trial judge expanded the buffer zone to directly include those specific areas west of the courthouse. In other words, the Extension directly advanced the goal of ensuring a fair trial. That the Second Order is in effect during a limited time frame—the course of the criminal trial—demonstrates narrow tailoring. Significantly, Plaintiffs may still engage in the same forms of protest outside the buffer zone. In sum, the Extension is limited in scope and time, clearly tailored "to ensure the defendant's right to a fair trial," [Doc. No. 1-4 at 2], and continues to "leave[] open ample alternative channels for communication of the information." *Spicuzza*, 494 Mass. at 1008. Such safeguards are "necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence." *Cox*, 379 U.S. at 562.

Plaintiffs argue that the Second Order was not sufficiently narrowly tailored. For example, Plaintiffs argue that any restrictions on demonstrations should only be during jury selection, jurors could be brought through alternate entrances, and where there may be reasonable buffer zones enacted, demonstrators could be asked to turn away from a juror or witness until that person enters the courthouse. Contrary to Plaintiffs' assertion, the Second Order "need not be the least restrictive or least intrusive means of serving the government's interests," especially here, where the Extension served the legitimate interest of ensuring a fair trial. *Coakley*, 573 U.S. at 486 (cleaned up).

Thus, because the Second Order is content neutral, narrowly tailored to serve a significant government interest, and leaves open ample alternative channels for communication, Plaintiffs have not demonstrated a likelihood of success on the merits of their First Amendment claim.

### 2. Due Process Claim

"At a minimum, due process requires that a party be given adequate notice that its conduct will be the subject of a binding judicial determination and that it be afforded an opportunity to be heard." *Wilson v. Town of Mendon*, 2002 U.S. App. LEXIS 4352, *17-19 (1st Cir. Mar. 19, 2002) (citing *Lambert v. California*, 355 U.S. 225, 228 (1957)).

Here, Plaintiffs argue they were not provided a meaningful opportunity to be heard, but do not point to any facts to support their assertion. Rather, the record indicates that the trial judge heard from the community regarding the Commonwealth's motion for a buffer zone and that local merchants made requests specifically pertaining to that motion. [Doc. No. 21 at 16 n. 43]. Such opportunity to be heard is further affirmed by the Second Order, which indicates the trial judge recognized "the list of concerns sent to the Court by the 'Karen Read Trial Prepare Together Group' – a group of local business owners and organizations that experienced issues with protestors during the first trial." [Doc. No. 1-4 at 3]. Significantly, there is nothing in the record to indicate that the trial judge restricted the Plaintiffs from voicing their opinions prior to the issuance of the Second Order. Thus, Plaintiffs have not shown a likelihood of success on their claim that there were no procedures in place to provide those impacted by the Second Order with an opportunity to contest it. *See Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 354 (1st Cir. 2004**)** (Where Plaintiff made no effort to apply the three-part analysis outlined

9

in *Mathews v. Eldridge*, 424 U.S. 319, 335, (1976), and where quantum of process required depends on such analysis, the court refused to do Plaintiff's "homework for it.").

Plaintiffs also argue that the Second Order is a vague unconstitutional regulation. "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–403 (1966)). Here, in relevant part, the Second Order identifies the action prohibited with specific examples—"no individual may demonstrate in any manner, including carrying signs or placards." [Doc. No. 1-4 at 4]. The Second Order clearly identifies the area where protesters are prohibited from demonstrating—"within 200 feet of the courthouse complex, including the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building"—as well as the zone of the Extension—"the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street." [*Id.*]. Finally, the Second Order specifies how long it will be in effect—"during trial of this case." [*Id.*]. Thus, "it is clear what the [Second Order] as a whole prohibits." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (cleaned up). "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a[n] [order] when it is surely valid in the vast majority of its intended applications." *Id.* (cleaned up).[3]

---

[3] I need not reach the remaining factors—irreparable harm, balance of the equities, and public interest—where Plaintiffs cannot demonstrate likelihood of success on the merits. *See New Comm. Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st. Cir. 2002) ("The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity"); *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 54 (1st Cir 2005) ("[Plaintiff] has not shown that it is likely to succeed on the merits of any of its claims. Since such a showing is a precondition to the securing of a preliminary injunction, . . . we need not probe the other components of the applicable four-part test.").

## III.      CONCLUSION

For the reasons stated above, Plaintiff States' Motion for Temporary Restraining Order, [Doc. No. 2], is <u>DENIED</u>.

SO ORDERED.

<u>/s/ Myong J. Joun</u>_____<br>
United States District Judge