# United States Court of Appeals
## For the First Circuit

---

No. 25-1380

JASON GRANT; ALLISON TAGGART; LISA PETERSON; SAMANTHA LYONS,

Plaintiffs, Appellants,

v.

TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS; BEVERLY J. CANNONE, in her official capacity as Justice of the Superior Court; GEOFFREY D. NOBLE, in his official capacity as Colonel of the Massachusetts State Police; MICHAEL D'ENTREMONT, in his official capacity as Chief of the Police Department of the Town of Dedham, Massachusetts; MICHAEL W. MORRISSEY, in his official capacity as the Norfolk County District Attorney,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Myong J. Joun, U.S. District Judge]

---

Before

Montecalvo, Lynch, and Kayatta,
Circuit Judges.

---

Marc J. Randazza, with whom Jay M. Wolman, Randazza Legal Group, PLLC, Mark Trammell, and Center for American Liberty were on brief, for appellants.
John G. Mateus for First Amendment Lawyers Association, Foundation for Individual Rights and Expression, and National Press Photographers Association, amici curiae.
John R. Hitt, Assistant Attorney General, with whom Andrea Joy Campbell, Massachusetts Attorney General, and Thomas E. Bocian, Gabriel Thornton, Emily Rothkin, and Emily Swanson,

Assistant Attorneys General, were on brief, for appellees.[*]

―――――――――――――

May 9, 2025

―――――――――――――

―――――――――――――

[*] Appellee D'Entremont was represented by separate counsel, Janelle M. Austin; did not file a brief; and ceded his oral argument time to co-appellees.

**Per Curiam**.  In June 2022, the Commonwealth of Massachusetts indicted Karen Read for murder. She pled not guilty, and at the end of a trial held in Norfolk County Superior Court (the "state court"), the jury failed to return a unanimous verdict, resulting in a mistrial. Prosecutors decided to retry Read, and opening statements began last week.

Read's case has become something of a cultural phenomenon. It has drawn headlines, controversy, and, as relevant here, throngs of demonstrators near the Norfolk County Courthouse (the "Courthouse"). The prior behavior of some of those demonstrators -- including loud protests and the display of materials directed toward trial participants -- frames a potential conflict between the state court's effort to conduct a fair trial and demonstrators' right to express their views.

A group of demonstrators (the "Plaintiffs") sought a preliminary injunction in the District of Massachusetts to secure their right to demonstrate in certain areas, which the district court denied. As we explain below, the parties' arguments and positions have evolved and narrowed during these expedited appellate proceedings, and we therefore send the case back to the district court to consider anew both Plaintiffs' motion and the Commonwealth's arguments against it.

I.

On April 4, 2024, in response to a request from the prosecution, and attempting to balance competing fair-trial and free-speech interests during the first trial, the state court entered an order creating a buffer zone around the Courthouse. That order provided, in relevant part, that "no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of [the Read] case, unless otherwise ordered by this Court." In so ordering, the state court explained:

> [I]t is well documented that protestors have shouted at witnesses and confronted family members of the victim. Individuals have also taken to displaying materials which may or may not be introduced into evidence during trial, and airing their opinions as to the guilt or innocence of [Read] on their clothing or on signage. Witness intimidation has also been a prevalent issue in this case.

The order, in effect, curtailed all demonstrations along three sides of the Courthouse, while demonstrations persisted beyond the buffer zone in an area west and northwest of the Courthouse. Several demonstrators intervened to challenge the order in state court, arguing that it violated their rights under the First Amendment and the analogous state constitutional provision. See Spicuzza v. Commonwealth, 232 N.E.3d 145, 147 (Mass. 2024). The Massachusetts Supreme Judicial Court ultimately rejected their challenge, concluding that the record lacked

evidence to support their claim that the order "extend[ed] beyond the court house grounds," and that the state court had adequately balanced free-speech and fair-trial concerns in crafting the order. Id. at 149.

Before commencing Read's retrial, the Commonwealth sought a new and broader order further limiting demonstrations. In support, the Commonwealth attached an affidavit from a juror in the prior trial, an affidavit from a Massachusetts police sergeant who supervised Courthouse security personnel during the first trial, two news stories covering the protests at the first trial, social media posts about protester behavior at the first trial, and a list submitted by local organizations and businesses of the issues they encountered with protestors during the first trial.

On March 25, 2025, the state court agreed, expanding its ban on "demonstrat[ing] in any manner" to encompass not only a radius of 200 feet around the Courthouse, but also the area west and northwest of the Courthouse, "bounded by Bates Court, Bullard Street, Ames Street, and Court Street" (the "Order").  In justifying this now-expanded buffer zone, the state court explained that "during the first trial," people within the Courthouse could hear "the collective voices of groups of demonstrators gathering outside the [original] buffer zone," including "along High Street between Bullard Street and Ames Street."  Indeed, the Order documented that "after trial, a

deliberating juror reported that during deliberations, the jurors could hear protestors outside screaming and yelling." Additionally, "[v]ehicles honking their horns in response to signs and gestures from these demonstrators could . . . be heard frequently during the first trial." The Order concluded that "[t]o ensure a fair trial with an impartial jury, extending the buffer zone is necessary to prevent jurors from outside influence and to prevent interruptions and distractions during trial."

## II.

A group of individuals who seek to demonstrate during the second trial in an area barred by the Order filed this action in the District of Massachusetts, requesting a preliminary injunction against the Order. Following a period of expedited briefing and argument lasting just eleven days, the district court denied the motion for a preliminary injunction. See Grant v. Trial Ct. of Mass., No. 25-cv-10770, 2025 WL 1147752, at *1 (D. Mass. Apr. 11, 2025). Finding Plaintiffs unlikely to succeed on the merits, the court determined that the Order is likely "narrowly tailored to serve a significant governmental interest." Id. at *3-4 (quoting McCullen v. Coakley, 573 U.S. 464, 486 (2014)). Plaintiffs then initiated this appeal, which has also proceeded on an expedited basis, with briefing completed this past Sunday, and oral argument held the next day.

### III.

When ruling on a motion for a preliminary injunction, a district court must consider four factors: (1) "the movant's likelihood of success on the merits," (2) "whether and to what extent the movant will suffer irreparable harm in the absence of injunctive relief," (3) "the balance of relative hardships," and (4) "the effect, if any, that an injunction or the lack of one may have on the public interest." Russomano v. Novo Nordisk Inc., 960 F.3d 48, 52 (1st Cir. 2020) (cleaned up). "We review the district court's ruling on a motion for a preliminary injunction for abuse of discretion. Within that framework, we examine legal questions de novo, findings of fact for clear error, and the balancing of the four factors for abuse of discretion." Id. at 53 (quotation marks and citations omitted).

### IV.

At oral argument, Plaintiffs clarified that they do not challenge the Order as applied to Courthouse property.[1] Plaintiffs likewise stated at oral argument that they do not seek to demonstrate along the pathways -- including public sidewalks and roads -- through which trial participants enter and exit the Courthouse. And they additionally disclaimed at oral argument any

---

[1] The Order also prohibits individuals in the Courthouse from "wear[ing] any buttons, photographs, clothing, or insignia, relating to [Read's] case." Plaintiffs said at oral argument that they do not challenge this portion of the Order.

- 7 -

legal argument in favor of noisy protest.  Finally, Plaintiffs do not contest that the Commonwealth may -- consistent with the First Amendment -- regulate at least some demonstration-related conduct beyond Courthouse grounds, such as certain picketing of courts, judges, jurors, witnesses, and court officers, Mass. Gen. Laws ch. 268, § 13A (2025); intimidation of witnesses and jurors, id. § 13B; disruption of court proceedings, id. § 13C; and public disturbances, id. ch. 272, § 53.[2]

The upshot is that Plaintiffs have suggested to us that they challenge the Order as applied to quiet, offsite demonstrations on public property, in areas and at times that do not interfere with trial participants' entrance into and exit from the Courthouse, that do not interfere with the administration of justice, and that will not influence any trial participants in the discharge of their duties.

**V.**

The areas where Plaintiffs seek to demonstrate -- most notably, public sidewalks -- "are 'quintessential' public forums for free speech." Hill v. Colorado, 530 U.S. 703, 715 (2000); see also Schenck v. Pro-Choice Network of W. N.Y., 519 U.S. 357, 377

---

[2] Plaintiffs argue that Massachusetts judges lack authority under state law to reach the offsite conduct of individuals with no formal relation to court proceedings.  Suffice it to say, Plaintiffs point to a murky area of Massachusetts law in which their likelihood of success on the merits is not sufficiently clear for us to order preliminary injunctive relief on these grounds.

(1997) ("Leafletting and commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment, and speech in public areas is at its most protected on public sidewalks, a prototypical example of a traditional public forum."). And all parties agree that we must reject the Order under the First Amendment if it is not "narrowly tailored to serve a significant governmental interest" or if it does not "leave open ample alternative channels for communication of the [suppressed] information." Coakley, 573 U.S. at 477 (citation omitted).[3]

In assessing whether a courthouse buffer zone survives judicial review, we do not write on a blank slate. In Cox v. State of Louisiana, the Supreme Court recognized a state's interest "in protecting its judicial system from the pressures which picketing near a courthouse might create." 379 U.S. 559, 562 (1965). There, the Court considered the as-applied validity of a Louisiana statute making it a crime to "picket[] or parade[] in or near a" courthouse, "with the intent of interfering with . . . the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty." Id. at 560. The Court held that the statute was "narrowly

---

[3] Plaintiffs advance several theories that would require us to apply a higher level of scrutiny, but we do not reach these theories because we conclude that vacatur and remand is appropriate even under the less strict test described above.

drawn" to effect a "substantial state interest" and thus survived First Amendment review. Id. at 562-64.[4]

Thus, with Cox as our guide, we must determine whether the Order is narrowly tailored to effectuate the Commonwealth's asserted interests. In attempting to distinguish Cox, Plaintiffs point principally to the mens rea requirement of the Louisiana statute, which bars only protests directed toward interfering with the administration of justice or influencing trial participants. Id. at 560.[5] By including such a requirement, Louisiana tailored the statute to target the type of speech that most threatens the judicial system -- i.e., speech "inten[ded]" to effect "mob law" and thus to "infringe[ the] substantial state interest in protecting the judicial process." Id. at 560, 562, 564. Notably, the Massachusetts and federal statutes that Cox cited as "similar" to the Louisiana statute share this feature. Id. at 561 (citing Mass. Gen. Laws ch. 268, § 13A (1965); 18 U.S.C. § 1507 (1965)).

---

[4] At the same time, the Court held that the state violated due process by telling a demonstrator that he could protest 101 feet from the courthouse and then prosecuting him for doing just that. See Cox, 379 U.S. at 571.

[5] Plaintiffs also suggest that Cox's First Amendment reasoning turned in part on the legislative provenance of the restriction at issue. We see no evidence in Cox for this assertion. See Cox, 379 U.S. at 560-64. In other words, Cox's First Amendment holding applies even if a court, rather than a legislature, imposes a limitation on courthouse protest.

The Order, by contrast, seems to lack a mens rea requirement -- i.e., it likely applies equally to speech directed toward random passersby and speech directed toward trial participants. And Plaintiffs do not appear to ask us to allow them to engage in the latter type of speech: At oral argument, they indicated that they seek only to engage in quiet, offsite demonstrations on public property, in areas and at times that do not interfere with trial participants' entrance into and exit from the Courthouse, that do not interfere with the administration of justice, and that will not influence any trial participants in the discharge of their duties.

These fresh clarifications bring into focus Plaintiffs' argument that Cox's tailoring holding should not control this case. With Plaintiffs' position now clarified, we think it prudent to vacate (but not reverse) the district court's denial of a preliminary injunction and remand this case for further proceedings to determine how the Order has been interpreted and applied and whether the lack of a mens rea requirement renders the Order insufficiently tailored.[6] Cf. Welch v. Shultz, 482 F.2d 780, 783 (D.C. Cir. 1973) (per curiam) (remanding a case for "definition and examination afresh on an up-to-date factual record").

---

[6] Because we remand on the First Amendment issue, and because its resolution may affect the framing of Plaintiffs' other federal arguments, we do not now weigh in on those issues.

Of course, the state court could, entirely of its own volition, further simplify any potential First Amendment issues by amending the Order to introduce a mens rea requirement as in Cox and Mass. Gen. Laws ch. 268, § 13A (2025) -- i.e., by limiting the Order to demonstrations directed toward interfering with the administration of justice or influencing trial participants. Based on Plaintiffs' representations at oral argument, such an amendment would allow Plaintiffs to engage in their desired quiet, offsite, nonobstructive demonstrations, while minimizing the risk that demonstrators will improperly interfere with the judicial process.  No costs are awarded.