# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON GRANT, ALLISON TAGGART, LISA PETERSON, and SAMANTHA LYONS,<br><br>Plaintiffs,<br><br>v.<br><br>TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS, BEVERLY J. CANNONE, in her official capacity as Justice of the Superior Court, GEOFFREY NOBLE, as Superintendent of the Massachusetts State Police; MICHAEL d'ENTREMONT, in his official capacity as Chief of the Police Department of the Town of Dedham, Massachusetts, and MICHAEL W. MORRISSEY, in his official capacity as the Norfolk County District Attorney,<br><br>Defendants. | Civil Action No. 1:25-cv-10770-MJJ<br><br>**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, AN INJUNCTION PENDING APPEAL** |

On May 9, 2025, the First Circuit vacated the denial of Plaintiffs' motion for a preliminary injunction. On May 10, 2025 the Court promptly scheduled a remote conference for 2:30 PM on May 12. Plaintiffs would like to express respect and gratitude to the Court for how quickly it has moved at every juncture in this case. From scheduling the initial TRO hearing on an expedited basis, to rapidly ruling on the emergency motion to clarify, this Honorable Court has acted with shown a commitment to avoiding any "justice delayed is justice denied" concerns. This spirit continues with the Court scheduling a conference to deal with the now-narrowed issues in this case. It is Plaintiffs' desire to assist the court in keeping this pace, because every day of delay here

causes irreparable harm to the First Amendment.[1] To render that assistance, Plaintiffs provide this memo to the Court as a supplement to its Motion for a Temporary Restraining Order and for a Preliminary Injunction or, in the Alternative, an Injunction Pending Appeal (Docs. 2 & 3).

The First Circuit remanded "for further proceedings to determine how the [buffer zone] Order has been interpreted and applied and whether the lack of a *mens rea* requirement renders the Order insufficiently tailored." *Grant v. Trial Court*, 2025 U.S. App. LEXIS 11261, *10 (1st Cir. May 9, 2025). There is no impediment to the Court to reconsider its Order (as the First Circuit mandated) and impose a preliminary injunction narrowing the buffer zone in a manner consistent with what the First Circuit found would be constitutional. Plaintiffs respectfully request that the Court enter this Order *immediately*, as every day compounds the constitutional injury done to Plaintiffs, and every day of delay has merely emboldened the Massachusetts State Police to act in an even more unconstitutional manner.

The First Circuit recognized that the parties clarified and narrowed their positions. The apparent prior confusion over whether Plaintiffs sought an order that had any impact on *Courthouse property* has been cleared up. Plaintiffs "clarified that they do not challenge the Order as applied to Courthouse property" and that they do not seek to impede trial participants. They "disclaimed . . . any legal argument in favor noisy protest," and they "do not contest that the Commonwealth may – consistent with the First Amendment – regulate at least some

---

[1] The Commonwealth has previously accused the Plaintiffs of undue delay. Meanwhile, Plaintiffs have moved "*faster miles an hour*." (Jonathan Richman, *Roadrunner*, on THE MODERN LOVERS, Beserkley Records 1976). The Commonwealth's accusations to the contrary are ridiculous. The case was not ripe until March 25. Injunctive relief was requested *four business days later*. The motion for an injunction was denied April 11, a Friday, and clarified that night – as the Passover holiday commenced. Yet still, a motion for injunction pending appeal was filed on April 18. Meanwhile, there have been attempts to meet and confer over the issues in this memo, commencing Friday evening. There has been no response from the Commonwealth, as they presumably do not normally work over the weekends.

demonstration-related conduct beyond Courthouse grounds, such as certain picketing of courts, judges, jurors, witnesses, and court officers; intimidation of witnesses and jurors, disruption of court proceedings; and public disturbances." *Grant*, 2025 U.S. App. LEXIS 11261 at *6-7 (citations omitted).  However, that regulation should be in the form of enforcing *existing laws* – like M.G.L. c. 268 § 13B, which makes it a crime to willfully, either directly or indirectly, engage in acts intended to interfere with or retaliate against participants in criminal or civil proceedings.  These participants include witnesses, potential witnesses, jurors, judges, attorneys, law enforcement officers, court officials, or their family members.  Plaintiffs understand this law and do not seek an injunction that affects it.  That law covers every single last concern the Commonwealth could have, except the Commonwealth's desire to stop Plaintiffs from criticizing them.  M.G.L. c. 272, § 53, the disorderly conduct statute, would fill in any cracks that could be imagined.  If the buffer zone must then continue to exist at all (which it should not), and this Court believes that judges can impose regulations on the First Amendment outside their courthouses at all, then perhaps we could imagine a penumbral power where Judge Cannone may issue an order that "there will be no protests that I can hear inside my courtroom."  Such a power would be unconstitutional and used without due process, but Plaintiffs would leave that challenge to another set of plaintiffs another day.  They have said all along that they have no interest in being loud – but simply to do what they have been doing since November, quietly holding signs that criticize the government.

If "thou shalt not make loud sounds that I can hear in my courtroom" is the power that Judge Cannone wishes to assert now, then Plaintiffs do not wish to challenge *that*.  However, the Commonwealth has risibly suggested that if cars honk at the protesters, that is enough to demand that their First Amendment rights be suspended.  The government says that there should be no

- 3 -

Plaintiffs' Supplemental Memo in Support of Motion for a TRO and Preliminary Injunction
Civil Action No. 1:25-cv-10770-MJJ

silently holding signs because the mere act of silent protest encourages vehicles to honk their horns in support of, or in opposition to, those signs.

"Heckler's vetoes," which occur when speech is curtailed to prevent public disorder, are "impermissible justifications for the restriction of speech." *Hussey v. City of Cambridge*, 720 F. Supp. 3d 41, 58 n.15 (D. Mass. 2024), *citing Bachellar v. Maryland*, 397 U.S. 563, 567 (1970). Granting a heckler's veto is an impermissible and unconstitutional content-based and viewpoint-based restriction. *See Terminello v. Chicago*, 337 U.S. 1 (1949); *Seattle Mideast Awareness v. King Cty.*, 781 F.3d 489, 502-03 (9th Cir. 2015).

Here, the government impermissibly and unconstitutionally restricted speech based upon assumptions about the public's reaction to that speech. Given that the jurors or trial participants inside the courthouse will have no idea whether the persons driving the honking vehicles supported the prosecution of Karen Read, opposed it, or were merely irritated at another driver, the government is arguing that persons in the courthouse should be protected from the sounds of everyday traffic noise. This is facially absurd.

Even if it passed the lack-of-absurdity test, would this Court impose a rule that if protesters stand anywhere, they should be held liable for violating noise ordinances by proxy if supporters or detractors honked their horns at them or yelled at them? This kind of argument merely demonstrates that the government wants an unconstitutional heckler's veto on the protestors. An unconstitutional "heckler's veto" exists when the government allows or disallows protected speech based merely on the audience's reaction to its content. See *Bachellar*, 397 U.S. at 567. If we would not stifle speech because passersby might react violently, we certainly do not stifle it because someone might honk their car horn.

- 4 -

Plaintiffs' Supplemental Memo in Support of Motion for a TRO and Preliminary Injunction
Civil Action No. 1:25-cv-10770-MJJ

The First Circuit noted that "all parties agree that we must reject the Order under the First Amendment if it is not 'narrowly tailored to serve a significant government interest' or if it does not 'leave open ample alternative channels for communication of the [suppressed] information." *Grant*, 2025 U.S. App. LEXIS 11261 at *7-8 (citation omitted). Using *Cox v. State of Louisiana*, 379 U.S. 559 (1965), as its guide, the First Circuit found that the buffer zone Order lacked a *mens rea* requirement, such that "it likely applies equally to speech directed toward random passersby and speech directed toward trial participants." *Id.* at *9. The lack of any tailoring to the buffer zone has quashed *all* forms of protest or political demonstration, speech at the very core of the First Amendment's protections. The zone is so vague and overinclusive that it has been enforced as a complete lockdown zone as if it were around a military facility storing nuclear secrets during a terrorist warning. The chilling effect has shut down demonstrations regarding a trial that has gripped the Commonwealth, as anyone who so much as speaks a word about Karen Read within hundreds of feet of the Courthouse may be brutalized and arrested by law enforcement.

The country is watching to see what courts in the very Cradle of Liberty think about the First Amendment. National organizations have entered the fray. *See* Brief of Amicus Curiae filed by First Amendment Lawyers Association; Foundation For Individual Rights and Expression; National Press Photographers Association, attached as **Exhibit 1**. This Court has an opportunity to show leadership by doing something constitutionally unassailable – simply ruling that people can silently demonstrate within the buffer zone without fear of being attacked or jailed. There is no risk of controversy or jury tampering, or any number of other phantasmal evils the Commonwealth has proposed. Indeed, the purported dangers of jury tampering are fabricated, as shown by the amicus brief one of the jurors in the prior Karen Read trial attempted to file with the

First Circuit. *See* Jane Roe motion for leave to file amicus brief, attached as **Exhibit 2**. She attested to the following:

- Jane Roe did not feel in any way "bothered or influenced by" the presence of demonstrators. *Id*. at Affidavit ¶ 5.
- Noise from outside "was no more disruptive than normal traffic passing by . . . [and] I could not make out any words, only cheers similar to what you would hear at a sporting event." *Id*. at Affidavit ¶ 6.
- "In both jury rooms, the window facing the demonstrators was covered with curtains to block our view in that direction. I could see that on occasion some people had signs, but I could not make out any words or pictures on the signs while walking through the main courtroom or departing on the bus." *Id*. at Affidavit ¶ 7.
- "I never felt threatened, intimidated or scared of the demonstrators as I was entering or exiting the courthouse. Never once did someone attempt to approach the bus, stand outside the jury entrance, or take photos of us. The police blocked the end of the street as we were entering and exiting court, I never saw anyone disrespect that boundary and attempt to interfere with the police doing their job." *Id*. at Affidavit ¶ 8.

This evidence of complete non-obstruction is far more compelling than anything the government presented to justify the buffer zone. This should comfort this Court that when it issues an order that preserves the First Amendment, it is not doing so at the expense of the Sixth Amendment. The exhortations of such are simply false representations offered pretextually as a power-grab.

Per the First Circuit, the buffer zone Order has constitutional deficiencies that require this Court to "determine how the Order has been interpreted and applied and whether the lack of a

- 6 -

Plaintiffs' Supplemental Memo in Support of Motion for a TRO and Preliminary Injunction
Civil Action No. 1:25-cv-10770-MJJ

*mens rea* requirement renders the Order insufficiently tailored." *Grant*, 2025 U.S. App. LEXIS 11261 at *10. The Court should also be mindful that if any buffer zone is permitted at all, it must comport with the standards set out in *McCullen v. Coakley*, 573 U.S. 464, 477 (2014), specifically that it be "narrowly tailored to serve a significant government interest" and that it "leave open ample alternative channels for communication of the [suppressed] information."

The First Circuit has found that the buffer zone Order in its current form is unconstitutional. It has also found that the Order *might* be constitutional with the inclusion of a *mens rea* requirement and limitations that permit protests in areas and at times that do not interfere with trial participants' entrance into and exit from the Courthouse, that do not interfere with the administration of justice, and that will not influence any trial participants in the discharge of their duties. The relief requested here is limited; Plaintiffs simply request that the Court enter a limited injunction constraining enforcement of the buffer zone Order to individuals who intentionally interfere with trial participants' entrance into and exit from the Courthouse, that interfere with the administration of justice, and that influence any trial participants in the discharge of their duties. Such an injunction should permit protesting in areas and at times that do not cause such interference. It is somewhat galling that the parties' burdens here seem reversed, in that private citizens are required to identify the specific speech in which they want to engage, while the government is rewarded with piecemeal carveouts for its overbroad speech restrictions, but that is why the relief requested here is narrow.

Now that the First Circuit has spoken, there is no need for extensive briefing, or a hearing, or any delay; Plaintiffs simply ask for the bare minimum of what the First Circuit has already laid out. This Court should enter the requested injunction, as outlined in the attached Proposed Order, without delay. If it declines to do so, it should deny Plaintiffs' request *immediately* and make clear

- 7 -

Plaintiffs' Supplemental Memo in Support of Motion for a TRO and Preliminary Injunction
Civil Action No. 1:25-cv-10770-MJJ

that it will not grant an injunction on appeal, so that Plaintiffs may file another emergency appeal to the First Circuit.[2]

Dated: May 11, 2025.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
Jay M. Wolman, BBO# 666053
jmw@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Mark Trammell (*pro hac vice*)
MTrammell@libertyCenter.org
CENTER FOR AMERICAN LIBERTY
P.O. Box 200942
Pittsburgh, PA 15251
Tel: (703) 687-6200

*Attorneys for Plaintiffs.*

---

[2] Plaintiffs do not waive any other arguments they have made regarding the buffer zone's unconstitutionality, such as Judge Cannone's lack of authority to impose it, but such issues are not necessary to determine that Plaintiffs are entitled to the requested injunction.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2025, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza