# EXHIBIT 1

Jane Roe Motion for Leave to File Amicus Brief

**No. 25-1380**

*In the*

# UNITED STATES COURT OF APPEALS

*for the*

# FIRST CIRCUIT

JASON GRANT, ALLISON TAGGART,
LISA PETERSON, AND SAMANTHA LYONS,

*Plaintiffs-Appellants,*

v.

TRIAL COURT OF THE COMMONWEALTH OF
MASSACHUSETTS, BEVERLY J. CANNONE,
GEOFFREY NOBLE, MICHAEL D'ENTREMONT,
AND MICHAEL W. MORRISSEY,

*Defendants-Appellees.*

*On Appeal from the United States District Court
for the District of Massachusetts
No. 1:25-cv-10770-MJJ
The Honorable Myong J. Joun*

## MOTION OF JANE ROE
## FOR LEAVE TO FILE AMICI CURIAE BRIEF

ROBERT J. MORRIS, II
HOUSER LLP
400 TRADECENTER, SUITE 5900
WOBURN, MA 01801
TEL: (339) 203-6498
RMORRIS@HOUSER-LAW.COM
Attorney for Amici Curiae

## MOTION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE

Pursuant to Federal Rule of Appellate Procedure 29(a) and First Circuit Court Rule 29(a), Jane Roe respectfully moves this Court for leave to file the accompanying *amici curiae* brief in support of Appellants' Opening Brief. In support of this Motion, proposed *amici* states as follows:

1. *Amici* is proceeding under a pseudonym to protect anonymity. Jane Roe was a member of the jury in the *First Karen Read Murder Trial* for several weeks. Jane Roe has direct and relevant testimony as a participant juror during the trial while inside the courtroom and in the juror rooms. Jane Roe's testimony about her observations of the protests and what could or could not be heard and seen during the prior trial should have been considered by the Superior Court in making its decision on whether to expand the buffer zone. Instead, the Superior Court ruled *ex parte* to expand the buffer zone in violation of Due Process.

2. Rule 29(a)(3) requires proposed *amici* to explain why the brief is desirable and why the matters asserted are relevant to the disposition of the case. *See Mass. Food Ass'n v. Mass. Alcoholic*

*Beverages Control Comm'n*, 197 F.3d 560, 568 (1st Cir. 1999)
("[A] court is usually delighted to hear additional arguments
from able amici that will help the court toward right answers.");
*Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128, 133 (3d Cir.
2002) (finding that "the criterion of desirability . . . is open-
ended, but a broad reading is prudent").

3. Appellants are demonstrators directly contemplated by the
   Superior Court's Order granting the Commonwealth's *ex parte*
   motion, relying on one-sided testimony about what could be
   heard inside the courthouse during the first trial. The enclosed
   brief provides the testimony of Jane Roe, whose testimony
   sharply contradicts the affidavits of the Commonwealth –
   testimony that the Superior Court did not allow to be heard.

4. Plaintiffs-Appellants have consented to the filing of this brief.

5. Defendants-Appellees have not provided their position at the
   time of filing this brief.

6. For the reasons set forth herein, Jane Roe respectfully requests
   that this Court grant the instant motion for leave to file the
   proposed *amici curiae* brief.

Date: April 28, 2025.     Respectfully submitted,

/s/ Robert J. Morris, II
Robert J. Morris, II (Bar No. 1205891)
Houser LLP
400 TradeCenter, Suite 5900
Woburn, MA 01801
Tel: (339) 203-6498
rmorris@houser-law.com
*Attorney for Amici*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that:

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this motion contains 369 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Date: April 28, 2025.

/s/ Robert J. Morris, II
Robert J. Morris, II

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: April 28, 2025.

/s/ Robert J. Morris, II
Robert J. Morris, II

**No. 25-1380**

*In the*

# UNITED STATES COURT OF APPEALS

*for the*

# FIRST CIRCUIT

JASON GRANT, ALLISON TAGGART,
LISA PETERSON, AND SAMANTHA LYONS,

*Plaintiffs-Appellants,*

v.

TRIAL COURT OF THE COMMONWEALTH OF
MASSACHUSETTS, BEVERLY J. CANNONE,
GEOFFREY NOBLE, MICHAEL D'ENTREMONT,
AND MICHAEL W. MORRISSEY,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court
for the District of Massachusetts
No. 1:25-cv-10770-MJJ
The Honorable Myong J. Joun*

_____

**BRIEF OF JANE ROE AS AMICI CURIAE IN SUPPORT
OF PLAINTIFFS-APPELLANTS**

_____

ROBERT J. MORRIS, II
HOUSER LLP
400 TRADECENTER, SUITE 5900
WOBURN, MA 01801
TEL: (339) 203-6498
RMORRIS@HOUSER-LAW.COM
Attorney for *Amici Curiae*

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Jane Roe, by and through undersigned counsel, hereby certifies to being an individual. Jane Roe has no parent corporations and no publicly held corporation owns 10% or more of their stock.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ............................................................. I

INTEREST OF AMICI CURIAE ...................................................... 1

INTRODUCTION ............................................................................. 2

RELEVANT BACKGROUND .......................................................... 2

ARGUMENT .................................................................................... 2

CONCLUSION ............................................................................... 10

CERTIFICATE OF COMPLIANCE ................................................ 11

CERTIFICATE OF SERVICE ......................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314

(1950)......................................................................... 5

*Grieco v. Meachum*, 533 F.2d 713, 719 (1st Cir. 1976), cert. denied,

429 U.S. 858 (1976), overruled on other grounds by *Maine v.*

*Moulton*, 474 U.S. 159 1985)......................................... 5

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).............................. 6

## INTEREST OF AMICI CURIAE

*Amici* is proceeding under a pseudonym to protect anonymity. Jane Roe was a member of the jury in the *First Karen Read Murder Trial* for several weeks. Jane Roe has direct and relevant testimony as a participant juror during the trial while inside the courtroom and in the juror rooms. Jane Roe's testimony about her observations of the protests and what could or could not be heard and seen during the prior trial should have been considered by the Superior Court in making its decision on whether to establish a buffer zone for the second trial and whether to expand that buffer zone. Instead, the Superior Court ruled *ex parte* to expand the buffer zone in violation of Due Process.

## INTRODUCTION

After the Superior Court issued an order establishing a buffer zone prior to the first murder trial and the order was upheld by appellate courts, understandably, the Superior Court issued a buffer zone prior to the second murder trial. What is inexcusable is that the Superior Court issued this order on an *ex parte* basis, denying procedural due process. At a minimum, the Superior Court should have provided notice of a hearing and an opportunity to be heard prior to entering an order that tramples on Appellants' First Amendment Rights.

## RELEVANT BACKGROUND

Prior to the *First Karen Read Murder Trial*, the Commonwealth moved for an order barring demonstrations within a buffer zone around the courthouse. Following a hearing, the Superior Court granted a 200-foot buffer zone by order dated April 4, 2024, providing in relevant part:

> [N]o individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during the trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior Courthouse building and the parking area behind the Norfolk County

> Registry of Deeds building. Individuals are also
> prohibited from using audio enhancing devices
> while protesting.

*Commonwealth v. Karen Read*, Civil Case No. 2282CR00117, Norfolk

Superior Court, Dkt. No. 274 at 2-3.

In preparation for the *Second Karen Read Murder Trial*, on

March 17, 2025, the Commonwealth moved for an order barring

demonstrations within a buffer zone around the courthouse and

requested an expanded buffer zone because protesting could be

heard inside the courtroom. *Commonwealth v. Karen Read*, Civil Case

No. 2282CR00117, Norfolk Superior Court, Dkt. No. 611.

The Commonwealth submitted an Affidavit of

Massachusetts State Police Sergeant Michael W. Hardman ("Sergeant

Hardman") and a Juror Doe to support its motion and testifying that

the buffer zone should be expanded because protesting could be

heard in the courthouse.

On March 25, 2025, without the benefit of oppositional

briefing, The Superior Court entered an order extending the 200-foot

buffer zone to include private property and traditional public forums,

including public sidewalks and other areas. The Superior Court

issued the following order:

> [N]o individual may demonstrate in any
> manner, including carrying signs or placards,
> within 200 feet of the courthouse complex
> during the trial of this case, unless otherwise
> ordered by this Court. This complex includes
> the Norfolk Superior Courthouse building and
> the parking area behind the Norfolk County
> Registry of Deeds building. **The buffer zone
> shall further be extended to include the area
> bounded by Bates Court, Bullard Street,
> Ames Street, and Court Street.** Individuals
> are also prohibited from using audio enhancing
> devices while protesting.

*Commonwealth v. Karen Read*, Civil Case No. 2282CR00117, Norfolk

Superior Court, Dkt. No. 630 at 3 (emphasis added).

The Superior Court based its findings on the testimony of

Sergeant Hardman and Juror Doe. Specifically, that during the *First*

*Karen Read Murder Trial*, "where there is a large open space running

along High Street between Bullard Street and Ames Street, the

collective voices of groups of demonstrators gathering outside the

buffer zone could be clearly heard inside the courthouse. *Id.* "Vehicles

honking their horns in response to signs and gestures from these

demonstrators could also be heard frequently during the first trial."

*Id.* "Indeed, after trial, a deliberating juror reported that during

deliberations, the jurors could hear protestors outside screaming and

yelling." *Id.* The Superior Court accepted the Commonwealth's

testimony verbatim without the benefit of dissenting or countervailing viewpoints.

## ARGUMENT

"An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citation omitted). Ex parte communications can "shadow the impartiality, or at least the appearance of impartiality," of a proceeding and "may, in some circumstances, constitute a deprivation of due process of law." *Grieco v. Meachum*, 533 F.2d 713, 719 (1st Cir. 1976), cert. denied, 429 U.S. 858 (1976), overruled on other grounds by *Maine v. Moulton*, 474 U.S. 159 (1985).

"[T]he specific dictates of due process generally require[] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the deprivation of First Amendment rights through the Superior Court's order granting the buffer zone and expanding that buffer zone based on an *ex parte* motion from the Commonwealth fails to provide procedural due process. There is countervailing testimony from a juror in the courtroom, who unlike the Commonwealth's witness, is not *pro-prosecution*. Jane Roe testifies that only on a handful of occasions could any noise be heard inside the jury room, and it could never be heard inside the courtroom. **Exhibit A** at ¶ 6. "The noise was no more disruptive than normal traffic passing by or first responders who were forced to use more sirens than usual while serving the citizens." More, Jane Roe "could not make out any words, only cheers similar to what you would hear at a sporting event." *Id.* Jane Roe, through personal observations in the courtroom and juror rooms, testifies that no messages or viewpoints from the protestors could be made out by the jury. Testimony like Jane Roe's should have been heard and given its

due weight before the Superior Court rushed to issue an order granting an expanded buffer zone.

The testimony of the Commonwealth's witnesses does not contradict Jane Roe's testimony. *Commonwealth v. Karen Read*, Civil Case No. 2282CR00117, Norfolk Superior Court, Dkt. No. 611. Sergeant Hardman claims to have observed groups of demonstrators gathered in areas "presumably with the property owners' permission, and engaged in coordinated shouting and chanting aimed directly at the courthouse" and those protesters could be heard within the courthouse even when standing outside the buffer zone, Sergeant Hardman Aff., ¶ 5. The Commonwealth also asserts that Juror Doe could hear protesters outside screaming and yelling during jury deliberations. Juror Doe Aff., ¶ 10. In addition, Sergeant Hardman claims that protesters encouraged passing vehicles to honk their horns as a form of demonstration and that the air horns of commercial vehicles could easily be heard in the courthouse.[1] Sergeant Hardman Aff., ¶ 6.

---

[1] It is unclear how Sergeant Hardman could make the determination that honking could be heard in the courthouse, especially when Juror Doe makes no such corroboration.

Neither Sergeant Hardman nor Juror Doe testified that the specific viewpoints of the protesters could be heard in the courtroom or juror rooms. Consistent with Jane Roe's account, the Commonwealth's witnesses described the noise from the protesters during the first trial as indistinct mumbling. This testimony does not support the Commonwealth's asserted interest in preserving the integrity and fairness of the proceedings, nor does it substantiate the Superior Court's rationale based on the right to a fair trial. Moreover, neither the Appellants nor anyone else was afforded an opportunity to develop this issue through notice and an opportunity to be heard.

## **CONCLUSION**

The Superior Court's Order denied due process because there was no notice and an opportunity to be heard. This Court should reverse the denial of the Appellants' preliminary injunction and remand for the entry of such and for further proceedings.

Date: April 28, 2025.          Respectfully submitted,

/s/ Robert J. Morris, II
Robert J. Morris, II (Bar No.
1205891)
Houser LLP
400 TradeCenter, Suite 5900
Woburn, MA 01801
Tel: (339) 203-6498
rmorris@houser-law.com
*Attorney for Amici*

## CERTIFICATE OF COMPLIANCE

I am the attorney or self-represented party. This brief contains 1393 words and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

The undersigned hereby certify that this amici brief complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

Date: April 28, 2025.

/s/ Robert J. Morris, II
Robert J. Morris, II

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: April 28, 2025.

/s/ Robert J. Morris, II
Robert J. Morris, II

# Exhibit A

---

**AFFIDAVIT OF COMMONWEALTH V. KAREN READ JUROR
FROM TRIAL NUMBER ONE JANE ROE**

---

I, JANE ROE, on oath, do hereby depose and state under the pains and penalties of

perjury:

1. I am of age and a resident of the Commonwealth of Massachusetts.

2. I am proceeding under a pseudonym to protect my anonymity. I am providing this
   affidavit for any purpose as evidence of my experience as a juror. I write in support of
   the First Amendment and the rights of demonstrators and journalists to report and be
   heard within appropriate locations so their messages are not relegated to far-away venues.

3. I am represented by attorney Timothy J. Bradl, who has assisted me in preparing this
   affidavit. He is authorized to provide my identity for lawful purposes to the Court or
   litigants as he sees fit as required with my safety and confidentiality in mind.

4. I was a member of the jury for weeks as this trial unfolded but was not chosen to
   deliberate.

5. On many occasions, I saw groups of people gathered around the courthouse, both through
   the window in the large courtroom as we returned to the jury room and from the bus after
   leaving court. The individuals were wearing various colors of clothing (not just pink). I
   was not bothered or influenced by their presence, quite the contrary. It made me proud
   that as Americans, we have the ability to exercise our right to demonstrate for a cause we
   believe in, regardless of the cause we support. I viewed the presence of these folks as
   nothing more than groups of citizens demonstrating for something they believe in.

6. In the courthouse, there were 2 separate jury rooms, both facing the demonstration
   zone. I heard noise from outside while in the jury room on less than a handful of
   occasions and never heard any noise inside the courtroom. The noise was no more
   disruptive than normal traffic passing by or first responders who were forced to use more
   sirens than usual while serving the citizens of Dedham as they passed through traffic
   caused by State Police vehicles around the perimeter of the courthouse. I could not make
   out any words, only cheers similar to what you would hear at a sporting event. Air
   conditioners were installed after a few weeks due to the heat; the windows were not open

1

while the air conditioners ran, and the majority of the noise we could hear prior was drowned out.

7. In both jury rooms, the window facing the demonstrators was covered with curtains to block our view in that direction.  I could see that on occasion some people had signs, but I could not make out any words or pictures on the signs while walking through the main courtroom or departing on the bus.

8. I never felt threatened, intimidated or scared of the demonstrators as I was entering or exiting the courthouse.  Never once did someone attempt to approach the bus, stand outside the jury entrance, or take photos of us.  The police blocked the end of the street as we were entering and exiting court, I never saw anyone disrespect that boundary and attempt to interfere with the police doing their job.

The foregoing statements above and in the accompanying motion are true and accurate to the best of my knowledge, information and belief.

Signed under penalties of perjury:

Date: April 27, 2025

x *Juror Roe*

JANE ROE, JUROR IN FIRST
KAREN READ TRIAL, NORFOLK
SUPERIOR COURT