# Exhibit C

Incident Report
Erica Walsh Arrest



# On-View Arrest
## Massachusetts State Police

450 WORCESTER RD
FRAMINGHAM, MA 01702
(508) 820-2250

## CASE # 2025-HTrp-5260

Invest Officer: Tpr Ryan Welsh ID# MSP5015
Ryan.P.Welsh@pol.state.ma.us

Court: Dedham District Court

Agency: H CAT

Activity Date/Time: 05/19/2025 1338    Incident Class: Field Interview or Observation

Location: 650 High St, DEDHAM, MA 02026

**Last:** WALSH
**First:** ERICA
Middle:
DOB:
Age:
SSN:
License #:
Lic. State:
SID:
PCF:
Address:
City/Town:
State:
Zip Code:
Phone #:
Occupation:

Race:
Sex:
Height:
Weight:
Hair Color:
Eye Color:
Marital Stat:
Spouse:
Father:
Mother:
Dependents:
Birth Place:

## OBTN: TSI5202500043
### Booked @ H-2 State Police Framingham

| | | | |
|---|---|---|---|
| Custody Status: | Bail Set | Injuries: | No |
| Booking Officer: | Tpr Ryan Welsh ID# MSP5015 | Suicidal? | No |
| Courtesy Booking: | No | Phone Used: | Yes |
| Courtesy Booking Station: | N/A | Number Called: | |
| Photo Officer: | Tpr Ryan Welsh ID# MSP5015 | Call Permitted By: | Tpr Ryan Welsh ID# MSP5015 |
| Desk Officer: | Tpr Scott Lucas ID# MSP4553 | Detox Notified: | No |
| Fingerprinted: | Yes | M/W: | No |
| Print Officer: | Tpr Ryan Welsh ID# MSP5015 | Medications: | None. |
| Subject Video Taped: | Yes | ICE Detainer?: | No |
| PREA Screening & Education: | Yes | Held on Detainer?: | No |
| Miranda Warnings Given: | Yes | | |
| Language Rights: | Yes | | |
| Translation By: | N/A | | |
| Primary Caretaker of Child? | No | | |

Tpr Ryan Welsh ID# MSP5015    Status: Approved
Approved by: Sergeant Michael Hardman ID# msp3121    Supervisor

5/19/2025 5:43:04 PM    Page 7 of 13

Arrest Narrative:

2025-HTrp-5260

By T



**Commonwealth of Massachusetts**
**Probation Department**
**Court Activity Record Information**

5/20/2025   7:36:10AM

Page 1 of 1

**Walsh, Erica**

Conversion, XX CONV

### CARI

| | |
|---|---|
| 05/02/2024 | CA |
| | DKT#: 2411CR001234B |
| | DT: 05/02/2024   Tewksbury PD   CRT: LOWELL DISTRICT (11) |
| | OFFENSE: **THREATENING (THREAT)**   **COMM CRIME - A&B** |
| | DISPOSITION: *PTCOR-A C 11/12/24 DISM* |
| | STATUS: CLOSED |
| 05/02/2024 | CA |
| | DKT#: 2411CR001234A |
| | DT: 05/02/2024   Tewksbury PD   CRT: LOWELL DISTRICT (11) |
| | OFFENSE: **THREATENING (THREAT)**   **COMM CRIME - A&B** |
| | DISPOSITION: *PTCOR-A C 11/12/24 DISM* |
| | STATUS: CLOSED |

CARIRecord rpt
5/20/2025

Records Include: PCF = 5651032, Case Number = , Docket Report Group = ALL, Docket Code = ALL, Include Linked Charges = True, Include Linked Cases = True, Include Rapsheet = False, Include DV Linked Images = False, Include Sealed Records = False.

Arrest Narrative:

2025-HTrp-5260

By Tpr Ryan P Welsh ID# MSP5015

Body worn camera (BWC) and/ or cruiser mounted camera (CMC) video images were captured during this incident. The Department of State Police policy recognizes that body worn camera and cruiser mounted cameras, by virtue of their placement on a member's uniform and cruiser, do not capture all visual and auditory observations made by a member on scene. This report is a summary of the events and not intended to capture every detail. Please refer to BWC/ CMC for further information.

On April 01, 2025, the second trial of Commonwealth v. Karen Read began in Norfolk Superior Court. Judge Beverly Cannone, the presiding judge in Commonwealth v. Karen Read, implemented a "buffer zone" around the Norfolk Superior Courthouse. This "buffer zone" prohibits demonstrating around the Norfolk Superior Courthouse during the trial and states in part, "no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case…"

On May 19, 2025, at approximately 1338 hours, Trooper Ryan Welsh #5015, Sergeant Michael Hardman #3121(Supervisor: Mass State Police Troop H Community Action Team), Trooper Anthony Nunziato #4576, Trooper Michael Clifford #4457 and Trooper Jeffrey Lang #4339 and was assigned to courthouse security at Norfolk Superior Court in Dedham for the Commonwealth V. READ Trial. While on post in front of the Registry of Deeds (649 High Street, Dedham), all Troopers observed a known protestor/demonstrator, identified as WALSH, Erica ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ walking by wearing a black sweatshirt with the words "Criminals Control Norfolk County" inside the Buffer Zone. Additionally, WALSH was wearing a hat labeled "FKR" an acronym standing for "Free Karen Read". WALSH has been addressed, warned and criminally charged three separate times in the past for wearing clothing items that directly involve the Comm. V Read Trial, which directly violates Judge Cannone's order. WALSH has also been informed that if she continues to violate the court order, she will be subject to arrest. The Massachusetts State Police has attempted to educate, warn, and enforce the Court Order without arresting WALSH to no avail. WALSH shows no regard for the Buffer Zone or the courtesy that the State Police has given her regarding her several court order violations. Troopers have even had discussions with known associates of WALSH that also are present during the day to try and curve WALSH's behavior. A good majority of the protestors at the Read Trial are cooperative and have good relations with the Troopers assigned to courthouse security. WALSH is an outlier that refuses to comply.

WALSH purposely walked directly next to the day shift State Police Community Action Team's (CAT) cruisers at 649 High Street, Dedham and sat on the cement slab that separates the front lawn of the Registry of Deeds and the sidewalk, directly in front of Norfolk Superior Court. WALSH had a camera crew with her while she made the walk, clearly displaying that this was a planned protest encounter. WALSH approached this location with the intent to picket in front of the courthouse and be placed under arrest by the Massachusetts State Police. WALSH purposely wore these items in the Buffer Zone and had the intent to obstruct or impede the administration of justice and with the intent to influence the Judge, jury, witnesses or court officers. WALSH sat on the slab with her camera crew of approximately 6 individuals and a gentleman in a blue suit (later found out to be her hired attorney at the time of arrest, Marco Randazza), for approximately 5 minutes. WALSH's camera crew was videotaping her, Norfolk Superior Court and all of our State Police Cruisers. While WALSH was sitting on the slab, Sergeant Hardman was in contact with Lisa Beatty who is the Assistant District Attorney for Norfolk County. Sergeant Hardman advised Lisa that this was a planned protest. Lisa stated the best course of action is to have a conversation and explain to WALSH That she needs to comply with the Court Order regarding the Buffer Zone, or she will be subject to arrest.

WALSH eventually got up and walked southbound on the sidewalk of High Street. WALSH, her attorney and her camera crew were met by Sergeant Hardman and I, Trooper Ryan Welsh. Sergeant Hardman told WALSH that she had been notified and warned that she cannot wear that sweatshirt inside the Buffer Zone multiple times. Sergeant Hardman also explained that she has been criminally summonsed for this in the past. Sergeant Hardman asked WALSH if she wanted to talk to the Judge, take the sweatshirt off or be subject to arrest. WALSH's attorney, Randazza stated she does not answer questions at this time. Sergeant Hardman stated to WALSH "You are under arrest". WALSH tensed up and pulls her arm away from Sergeant Hardman. Sergeant Hardman stated to stop resisting and placed WALSH in handcuffs. WALSH was escorted to the Mass State Police transport van #2960 and placed in the rear of the van. WALSH's belongings were given to Randazza at her request and transported to State Police Framingham. WALSH was relatively calm during the initial arrest, however during the transport she began swearing at me, kicking the backseat, and crying. While at State Police

5/19/2025 5:43:04 PM

Page 9 of 13

walked ▇▇

5/19/2025 5:43:04 PM

Framingham. WALSH was booked, fingerprinted, and photographed. WALSH was read her Miranda Rights open entry into the booking room where she subsequently signed and understood what was read to her. At the time of this writing, WALSH is being held at State Police Framingham pending contact of Bail Clerk Eric Guzzi. During booking WALSH continued to have change in behavior. WALSH would cry, get frustrated, and then get angry. WALSH continued to have mood swings throughout the booking process.

WALSH is being charged with the following out of Dedham District Court:
1. TRESPASS CH. 266 SECTION 120
1. COURT/JUDGE/JUROR, PICKETING CH. 268 SECTION 13A

**A history of WALSH at Commonwealth V Read:** WALSH is a frequent protestor/ demonstrator that partakes in daily demonstrations at the edge of the Buffer Zone. WALSH believes that Karen READ was framed. WALSH was an attendee at the first READ trial, which took place between April 16, 2024, through July 01, 2024. WALSH continues to attend almost every hearing and trial date regarding Karen READ and Aidan KEARNEY (Turtleboy). KEARNEY was charged criminally for intimidating witnesses several times involving the READ case.

WALSH usually congregates with other protesters at the edge of the Buffer zone on High Street in front of the Dedham Post Office. There are several signs posted around the Buffer Zone that state "Entering the Buffer Zone". There are two signs posted on light poles at eye level in the area of the Post Office. There are also "Entering the Buffer Zone" signs affixed on all of the main streets at the edges of the Buffer Zone. WALSH had to walk by these signs to approach the location she was encountered. As stated, WALSH is a frequent in the area and is aware of the court order regarding the Buffer Zone. Where WALSH was observed picketing, is a highly trafficked area of pedestrians, prosecutors, jurors, witnesses, court personnel and the victim's family. Potential jurors for the Superior Court exit from the Registry of Deeds and cross the street to the Superior Court. Witnesses from this case enter and exit through the front of Norfolk Superior Court front doors. Parties involved in the Read Trial will often stand at the entrance on breaks for fresh air and/or a cigarette. WALSH's sweatshirt had the potential to be seen from the Superior Court windows and front entrance.

WALSH has pictures with Karen READ available on her social media (Facebook and Instagram). WALSH approached the READ family as they exit the courthouse and embraced them with hugs. WALSH has even entered the courthouse with the READ family during the trial to sit with the family (05/06/2025). WALSH was identified and warned for violations of the court order on April 30, 2025, at approximately 0916 hours regarding Buffer Zone violations by Trooper Nunziato #4576 and Trooper Freedman #4712. WALSH was observed walking through the Buffer Zone with a "Free Karen Read" sweatshirt. WALSH was warned and asked to cover up the sweatshirt until she exited the Buffer Zone. Approximately 20 minutes after being warned, WALSH then walked through the Buffer Zone again, wearing the same sweatshirt, partially covered and carrying a "Free Turtleboy" sign affixed to a wooden pole (25-178284). Again, on April 30th WALSH returned to the Buffer Zone wearing a "Free Turtleboy Shirt" for the Aidan KEARNEY Hearing, standing in front of the Norfolk Superior Court steps awaiting to enter the courthouse. The READ Trial was on a lunch break and returned while WALSH was waiting in line. WALSH was eventually criminally charged for the violations and for wearing the exact "Criminals Control Norfolk County" sweatshirt on 05/02/2025 in front of the Registry of Deeds (Case #2025-SERT-35/21).

On May 12, 2025, at approximately 1100 hours, WALSH was again observed wearing the "Criminals Control Norfolk County" sweatshirt through the Buffer Zone (Case # 2025-112-251/6). Trooper Jonathan Freedman #4712 approached WALSH and addressed the sweatshirt. Trooper Freedman explained to WALSH that she had been spoken to previously for wearing the exact sweatshirt through the Buffer Zone in the past. WALSH became confrontational stating that it did not have Karen Read on it. WALSH then became very upset and offered herself up for arrest. Troopers did not place her into custody but rather told her she must leave the Buffer Zone and that she will be criminally summonsed for trespassing again for violating the court order.

WALSH has stated multiple times that this sweatshirt does not involve the Karen Read case, but a different one. However, attached is a photo that was posted from Aiden Kearney (AKA TurtleBoy Twitter Handle @doctorturtleboy) on May 12, 2025 at 1147 hours directly next to the Buffer Zone. This photograph shows that this sweatshirt is directly related to the Buffer Zone and the Com. V. Read Trial. Norfolk County is directly involved as the Commonwealth in the Com V. Read Trial.

WALSH was identified on May 16th, 2025 by Sergeant Hardman (Case #25-203188) at approximately 1050 hours wearing a black t-shirt that stated, "Mass State Police, Biggest Gang In Town".

WALSH was identified by myself earlier today, May 19, 2025 at approximately 1114 hours (Case #25-207753) wearing the same sweatshirt WALSH has been warned about and criminally summonsed three times prior to this arrest and has been mentioned in this report in paragraph 3. WALSH walked into the Buffer Zone and waited to see our reaction. Once WALSH got a reaction from us, she hastily walked out of the Buffer Zone, appearing to play a game of cat and mouse. While WALSH has been

*BW*

warned more than multiple times and criminally charged, WALSH has always been welcomed to walk, stand and be in the area if she is adhering to the Buffer Zone despite her attitude with the State Police and her lack of abiding by Judge Cannone's Order. WALSH has always been welcomed to protest her beliefs as long as she is in compliance with the court order despite her several pending charges.

Attached to this report are pictures of the Buffer Zone signs, The Court Order, The amendment to the Court Order, the picture posted by Turtleboy of the "Criminals Control Norfolk County" sweatshirt that WALSH is wearing next to the Buffer Zone sign, and the picture of the "Criminals Control Norfolk County" sweatshirt that WALSH wore today.

Tpr Ryan Welsh ID# MSP5015

Tpr Ryan Welsh ID# MSP5015

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                                    SUPERIOR COURT
                                                                CRIMINAL ACTION
                                                                22-00117

COMMONWEALTH

vs.

KAREN READ

## SUPPLEMENTAL ORDER REGARDING THE BUFFER ZONE

The court is in receipt of the decision of the United States Court of Appeals for the First Circuit in *Grant* v. *Trial Ct. of Commonwealth of Massachusetts*, No. 25-1380 (1st Cir. May 9, 2025) (hereinafter "The Decision"). To simplify any potential First Amendment issues related to the Buffer Zone restrictions implemented by prior orders, this court, guided by the Court of Appeal's suggestion set out on page 12 of The Decision, issues the following supplemental order regarding the Buffer Zone:

First, for all the reasons cited in support of prior orders and based upon the parameters of the dispute as narrowed and described in the Decision, all orders of this court remain in place insofar as they apply to Courthouse property.

Second, prior orders remain in place as applied to pathways – including public sidewalks and roads – through which and at which times trial participants enter and exit the Courthouse.

Third, noisy protests, including those using amplified sound, honking horns or loud screaming and yelling that are intended to interfere with the administration of justice or are intended to influence any judge, juror, witness, or court officer in the discharge of his or her duties are prohibited within the buffer zone.

Fourth, the display of written or graphic materials that are intended to interfere with the administration of justice or are intended to influence any judge, juror, witness, or court officer in the discharge of their duties are prohibited within the buffer zone.

Fifth, any person whose activity has been restricted by an officer enforcing this order may request review by a judge of the Superior Court, which request shall be heard as expeditiously as possible.

Quiet, offsite demonstrations on public property, in areas and at times that do not interfere with trial participants' entrance into or exit from the Courthouse, and that do not interfere with the orderly administration of justice, and that are not intended to influence any trial

participants in the discharge of their duties are specifically outside the scope of the Buffer Zone restrictions.

**SO ORDERED**

Date: May 15, 2025

_Beverly J. Cannone_
Beverly J. Cannone
Justice of the Superior Court

# TRESPASS

G.L.c. 266, § 120

The defendant is charged with trespass.

In order to prove the defendant guilty of trespass, the Commonwealth must prove two things beyond a reasonable doubt:

*First:* That, without right, the defendant entered or remained (in a dwelling house) (in a building) (on a boat) (on improved or enclosed land) of another; and

*Second:* That the defendant was forbidden to enter or to remain there by the person in lawful control of the premises, either directly or by means of a posted notice.

> *Commonwealth v. Richardson*, 313 Mass. 632, 637 (1943) (the two forbidden acts are phrased disjunctively); *Commonwealth v. Einarson*, 6 Mass. App. Ct. 835, 835 (1978) (municipal ordinance or regulation forbidding trespass after dark must be introduced in evidence).

The first requirement is satisfied by proof that the defendant either entered on the premises without permission, or failed to leave after being requested to do so.

> **A. If there was a posted notice.** To satisfy the second element, the Commonwealth is not required to prove that the defendant actually saw a notice forbidding trespassing. The

Instruction 8.220                                                                                           Page 2
TRESPASS                                                                                         Revised March 2017

Commonwealth is only required to prove that there was a reasonably distinct notice forbidding trespass, and that it was posted in a reasonably suitable place so that a reasonably careful trespasser would see it.

> *Fitzgerald v. Lewis*, 164 Mass. 495, 500 (1895) (notice need not be signed or indicate the basis of its authority).

**B. *If there was no posted notice.*** To satisfy the second element by proving that the owner "directly" forbade entry to the defendant, the law does not require a person having control of unposted premises to be on the premises at all times of the day or night to personally warn off intruders. Such a person may also bar entry by securing the premises with secure fences or walls and with locked gates or doors, and this is considered to be "directly" forbidding entry to the premises.

> *Commonwealth v. A Juvenile (No. 1)*, 6 Mass. App. Ct. 106, 108 (1978).

NOTES:

1. **"Another's" property.** Evidence supporting an inference that the property did not belong to the defendant is sufficient to establish that the property belonged to another. *Commonwealth v. Averill*, 12 Mass. App. Ct. 260, 263 (1981).

2. **Without right.** "A belief on the part of the person entering upon land not in his control that the land is his" is still an entry without right. *Fitzgerald v. Lewis*, 164 Mass. 495, 501 (1895).

3. **External deck, porch, steps.** An external deck or porch, or steps leading to the front door, are properly regarded as part of a building for purposes of the trespass statute. *Commonwealth v. Wolf*, 34

Mass. App. Ct. 949, 949 (1993).

4. **Holdover tenants.** A trespass charge may not be brought against holdover tenants; instead the owner must resort to civil proceedings. G.L. c. 266, § 120. As to foreclosing a mortgagee's rights, see *Attorney General v. Dime Savings Bank of New York, FSB*, 413 Mass. 284, 287-91 (1992).

5. **Implied license.** Under some circumstances, a person may be privileged to enter onto another's property to determine whether the person in control wishes to deal with him, and for passage off upon receiving a negative answer. See *Commonwealth v. Hood*, 389 Mass. 581, 589-590 (1983); *Commonwealth v. Krasner*, 360 Mass. 848, 848 (1971) (such implied license may extend to some parts of property but not others); *Richardson*, 313 Mass. at 639-40.

6. **Not lesser included offense of breaking and entering.** Trespass is not a lesser included offense of breaking and entering. *Commonwealth v. Vinnicombe*, 28 Mass. App. Ct. 934, 935 (1990).

7. **Public property.** General Laws c. 266, § 120 may be applied to state or municipal property as well as to privately-owned property. *Commonwealth v. Egleson*, 355 Mass. 259, 262 (1969). The model instruction may be adapted for a complaint brought under G.L. c. 266, § 123 (trespass on certain public property).

8. **Necessity defense.** In determining whether a defendant has satisfied the foundational requirements to claim necessity (see Instruction 9.240), the requirement that a defendant must present enough evidence to demonstrate at least a reasonable doubt that there were no effective legal alternatives available does not require a defendant "to rebut every alternative that is conceivable; rather, a defendant is required to rebut alternatives that likely would have been considered by a reasonable person in a similar situation." *Commonwealth v. Magadini*, 474 Mass. 593, 601 (2016) (defendant's testimony that he had been denied entry to the local homeless shelter, that he was unable to rent an apartment despite repeated attempts, and that he had no place else to stay was sufficient for the issue to go to the jury; whether it is an effective legal alternative for a homeless person to seek shelter outside of his or her home town is a question of fact for the jury to decide).

9. **Related statutes.** See G.L. c. 266, §§ 121 (trespass with firearms), 121A (trespass with vehicle); 120A (owner of trespassing parked vehicle is prima facie the trespasser), 120D (disposal of trespassing parked vehicle). See also G.L. c. 266, §§ 120B (abutter's privilege), 120C (surveyor's privilege).

| | |
|---|---|
| **Part IV** | CRIMES, PUNISHMENTS AND PROCEEDINGS IN CRIMINAL CASES |
| **Title I** | CRIMES AND PUNISHMENTS |
| **Chapter 268** | CRIMES AGAINST PUBLIC JUSTICE |
| **Section 13A** | PICKETING COURT, JUDGE, JUROR, WITNESS OR COURT OFFICER |

Section 13A. Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty, pickets or parades in or near a building housing a court of the commonwealth, or in or near a building or residence occupied or used by such judge, juror, witness, or court officer, shall be punished by a fine of not more than five thousand dollars or by imprisonment for not more than one year, or both.

Nothing in this section shall interfere with or prevent the exercise by any court of the commonwealth of its power to punish for contempt.

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CRIMINAL ACTION
22-00117

COMMONWEALTH

vs.

KAREN READ

## SUPPLEMENTAL ORDER REGARDING THE BUFFER ZONE

The court is in receipt of the decision of the United States Court of Appeals for the First Circuit in *Grant* v. *Trial Ct. of Commonwealth of Massachusetts*, No. 25-1380 (1st Cir. May 9, 2025) (hereinafter "The Decision"). To simplify any potential First Amendment issues related to the Buffer Zone restrictions implemented by prior orders, this court, guided by the Court of Appeal's suggestion set out on page 12 of The Decision, issues the following supplemental order regarding the Buffer Zone:

> First, for all the reasons cited in support of prior orders and based upon the parameters of the dispute as narrowed and described in the Decision, all orders of this court remain in place insofar as they apply to Courthouse property.
>
> Second, prior orders remain in place as applied to pathways – including public sidewalks and roads – through which and at which times trial participants enter and exit the Courthouse.
>
> Third, noisy protests, including those using amplified sound, honking horns or loud screaming and yelling that are intended to interfere with the administration of justice or are intended to influence any judge, juror, witness, or court officer in the discharge of his or her duties are prohibited within the buffer zone.
>
> Fourth, the display of written or graphic materials that are intended to interfere with the administration of justice or are intended to influence any judge, juror, witness, or court officer in the discharge of their duties are prohibited within the buffer zone.
>
> Fifth, any person whose activity has been restricted by an officer enforcing this order may request review by a judge of the Superior Court, which request shall be heard as expeditiously as possible.

Quiet, offsite demonstrations on public property, in areas and at times that do not interfere with trial participants' entrance into or exit from the Courthouse, and that do not interfere with the orderly administration of justice, and that are not intended to influence any trial

participants in the discharge of their duties are specifically outside the scope of the Buffer Zone restrictions.

**SO ORDERED**

Date:  May 15, 2025

Beverly J. Cannone
Justice of the Superior Court