UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-cv-10770-MJJ

JASON GRANT, ALLISON TAGGART, LISA PETERSON, and SAMANTHA LYONS,

Plaintiffs,

v.

TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS, BEVERLY J. CANNONE, in her official capacity as Justice of the Superior Court, GEOFFREY NOBLE, as Superintendent of the Massachusetts State Police, MICHAEL d'ENTREMONT, in his official capacity as Chief of Police Department of the Town of Dedham, Massachusetts, and MICHAEL W. MORRISSEY, in his official capacity as the Norfolk County District Attorney,

Defendants.

## AFFIDAVIT OF SERGEANT MICHAEL W. HARDMAN

I state the following under oath:

1. I am a Sergeant on the Massachusetts State Police.

2. Since April 1, 2025, I have been assigned as the supervisor of the Massachusetts State Police Troop H Community Action Team ("CAT") providing courthouse security at the Norfolk Superior Courthouse during the current trial in Commonwealth v. Karen Read.

3. Each day I supervise 14 troopers who are assigned to the CAT Team.

**General Implementation of the Buffer Zone**

1

4. In general, our goal in implementing and enforcing the Superior Court's buffer zone consistent with the Court's orders is to ensure the safety of the jurors, witnesses, defense team, family members, and the prosecution while entering and/or departing from the Courthouse, and to ensure, consistent with the Court's orders, that the defendant receives the fair trial to which she is entitled.

5. On a typical trial day, the CAT Team is in place and staged prior to the arrival of the parties. Usually, there is a group of interested individuals, protesters, and/or supporters already present in the area. I usually exchange pleasantries with this group, many of whom were also present during the first trial of Commonwealth v. Read.

6. Usually around 8:00 a.m., this group of individuals congregates around the corner at the intersection of Pearl Street and High Street outside of the Norfolk County Superior Court to await the arrival of the defense team. Once I receive notification that the defense team is en route to the courthouse, the CAT Team close down the corner of Pearl Street to ensure the safe entry of the defense team and others involved in the trial. Similarly, at the end of Court proceedings on any given date, CAT team members clear the corner of Pearl Street to effectuate the safe and orderly egress of the defense team, family members, and witnesses. CAT Team members also ensure the safe departure of the prosecution.

7. During the course of the trial, and based on the Court's subsequent issuance of supplemental and revised buffer zone order, I, at times, would seek clarification from the District Attorney's Office and/or my supervisors concerning the application of, and enforcement of, the Buffer Zone Order.

8. As Supervisor of the CAT team, much of my time is spent educating the public on the parameters of the Buffer Zone. CAT Team members carry "QR" codes providing direct links to information on the Buffer Zones so that the public is able to educate themselves as to the

specifics of the order. The majority of my interactions with members of the public in this regard have been positive.

**Incidents Involving Thomas Derosier**

9. I am aware of only two notable incidents involving Thomas Derosier during the current trial.

10. The first incident with Mr. Derosier took place on April 1, 2025. That day, I encountered Mr. Derosier at the crosswalk located on High Street in Dedham outside the Norfolk Superior Courthouse. I informed Mr. Derosier about the March 25, 2025 buffer-zone order. Mr. Derosier was known to frequent the area of the Norfolk Superior Courthouse during the first trial often recording and streaming content to his YouTube and social media platform. Mr. Derosier stated that he made multiple attempts to call various state police barracks to contact me concerning the buffer-zone requirements for the second trial. I informed Mr. Derosier that he may be in the newly expanded buffer zone as long as he is not displaying any signs or clothing that is related to the trial. Mr. Derosier appeared to understand and left the buffer zone without incident. It should be noted that Mr. Derosier believed that he was not allowed inside the buffer zone at all and was individually restricted by me, but due to the civil suit filed against me, I limited my interaction with him. I continued to educate the general public that as long as people are abiding by the court order, they are welcome to stand inside the buffer zone.

11. The second incident with Mr. Derosier took place on May 19, 2025. On that day, Trooper Ryan Welsh was assigned to courthouse security at the Norfolk Superior Courthouse. While on post at the crossroads of Pearl Street and High Street, Trooper Welsh and I saw Mr. Derosier filming in the unloading area for all witnesses and other court-involved parties in the Read trial, which is located inside the buffer zone. Mr. Derosier was located next to the unloading zone for the O'Keefe family, the defense team, and the prosecution. The jury bus

arrives in the rear of the courthouse but people standing on that corner can view the jury bus. We move viewers across the street to keep all three groups safe while entering and exiting the courthouse. It is a highly traveled area for trial participants including prosecutors, jurors, witnesses, court personnel, and the victim's family. The CAT Team is responsible for maintaining the safety of all trial participants entering the courthouse. CAT Team members are tasked with redirecting non-trial participants to the other side of the street to maintain a safe environment. On several prior occasions, CAT Team members have addressed and warned Mr. Derosier concerning his behavior in this restricted area, which directly violated the buffer-zone order.

13. When I saw Mr. Derosier in the area for trial participants, I instructed him to leave immediately. I also spoke to Mr. Derosier about his behavior in the trial-participant area. Mr. Derosier did not comply with my instructions or Trooper Welsh's instructions. It became clear to us, that Mr. Derosier was passively ignoring our command to move out of the restricted area. At that moment, the Karen Read defense team was about to arrive in the restricted area. Thus, I physically escorted Mr. Derosier across the street by holding his left arm in a physical-escort fashion. Despite his deliberate noncompliance, I exercised my discretion and did not criminally charge him.

14. Mr. Derosier usually congregates with other protestors at the edge of the buffer zone on High Street in front of the Dedham post office. There are several signs posted around the buffer zone that state "Entering the Buffer Zone." There are two signs posted on light poles at eye level in the area of the post office. Mr. Derosier had to walk by these signs to approach our cruisers which are parked in front of the Registry of Deeds on High Street. Mr. Derosier is a frequent visitor to the area and is aware of the buffer-zone order. Not only is it a highly

trafficked area for trial participants, as noted above, witnesses from the case enter and exit through the front of the Norfolk Superior Courthouse. Additionally, during the trial, trial participants will often stand just outside the courthouse entrance on breaks for fresh air or smoke a cigarette. Mr. Derosier's behavior had the potential to be seen from the Superior Court windows and the front entrance of the courthouse.

**Incidents Involving Jason Grant**

15. On May 16, 2025, I observed Mr. Grant holding a blue sign with a Biblical passage while on the side of the Registry of Deeds Building. I informed him that signs related to the trial were restricted inside the buffer zone. I also observed that he was attempting to secretly record me on his phone while his hands were shaking. I told him that he can record me and he does not have to be secretive about the matter. I also informed him that I would attempt to get better clarity regarding his sign.

16. After explaining this interaction to Norfolk County First Assistant District Attorney Lisa Beatty, she informed me to just allow the sign for the day and will revisit the issue on the following Monday. After this conversation with ADA Beatty, I approached Mr. Grant and advised him that he could display the sign. However, he did not display it the rest of the day. The following Monday, Mr. Grant displayed the sign while standing in front of the Registry of Deeds.

**Incidents Involving Erica Walsh**

17. I understand that a true and accurate copy of the incident report describing CAT interactions with Erica Walsh has been attached to Plaintiffs' supplemental filing in this case and appears at Doc. 67-3. That report sets forth the facts concerning Ms. Walsh.

Signed under the penalties of perjury this 21st day of May, 2025.

5

Sergeant Michael Hardman

### CERTIFICATE OF SERVICE

I hereby certify that I have today, May 22, 2025, served this Affidavit by ECF.

/s/ *John R. Hitt*
Assistant Attorney General
Massachusetts Attorney General's Office

6