**No. 1:25-cv-10770-MJJ**

# In the United States District Court for the District of Massachusetts

———————————————

JASON GRANT, ALLISON TAGGART,
LISA PETERSON, AND SAMANTHA LYONS,

*Plaintiffs,*

v.

TRIAL COURT OF THE COMMONWEALTH OF
MASSACHUSETTS, BEVERLY J. CANNONE,
GEOFFREY NOBLE, MICHAEL D'ENTREMONT,
AND MICHAEL W. MORRISSEY,

*Defendants,*

———————————————

**BRIEF OF *AMICI CURIAE* FIRST AMENDMENT LAWYERS
ASSOCIATION, FOUNDATION FOR INDIVIDUAL RIGHTS AND
EXPRESSION, AND NATIONAL PRESS PHOTOGRAPHERS
ASSOCIATION IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

John G. Mateus, Esq.
400 W. Cummings Park
Suite 1725-119
Woburn, MA 01801
John@MateusLaw.com
617-475-0158
*Counsel for* Amici Curiae

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................................................iii

RULE 7.1 DISCLOSURE STATEMENT....................................................iv

INTEREST OF *AMICI CURIAE*..................................................................1

ARGUMENT............................................................................................3

CONCLUSION.........................................................................................9

# TABLE OF AUTHORITIES

Brindley v. City of Memphis, 934 F.3d 461 (6th Cir. 2019)....................................8

Chicago v. Morales, 527 U.S. 41 (1999)...................................................4

M.G.L. c. 218 § 26..........................................................................6

M.G.L. c. 268 § 120.........................................................................6

M.G.L. c. 268 § 13A.........................................................................6

M.G.L. c. 272 § 53..........................................................................6

M.G.L. c. 274 § 1...........................................................................6

March  v. Mills, 867 F.3d 46 (1st Cir. 2017)...............................................8

McCullen v. Coakley, 573 U.S. 464 (2014)...................................................8

Minnesota Voters Alliance v. Mansky, 585 U.S. 1 (2018)......................................8

Mitchell v. Maryland Motor Vehicle Admin., 148 A.3d 319 (Md. 2016)..........................8

United States v. Kokinda, 497 U.S. 720 (1990)...............................................8

Reed v. Town of Gilbert, 576 U.S. 155 (2015)................................................8

## RULE 7.1 DISCLOSURE STATEMENT

Undersigned counsel certifies, pursuant to Federal Rule of Civil Procedure 7.1, that *amicus curiae* First Amendment Lawyers Association (FALA) is not a publicly held corporation and does not have any parent corporation, and that no publicly held corporation owns 10 percent or more of any corporation's stock.

Undersigned counsel certifies, pursuant to Federal Rule of Civil Procedure 7.1, that *amicus curiae* Foundation for Individual Rights and Expression (FIRE) is not a publicly held corporation and does not have any parent corporation, and that no publicly held corporation owns 10 percent or more of any corporation's stock.

Undersigned counsel certifies, pursuant to Federal Rule of Civil Procedure 7.1, that *amicus curiae* National Press Photographers Association (NPPA) is not a publicly held corporation and does not have any parent corporation, and that no publicly held corporation owns 10 percent or more of any corporation's stock.

## INTEREST OF *AMICI CURIAE*[1]

The First Amendment Lawyers Association (FALA) is a nonprofit organization comprised of attorneys across the United States with a shared commitment to preserving and advancing the rights guaranteed by the First Amendment. Since its founding in the 1960s, FALA has actively participated in cases concerning free expression, freedom of the press, and restrictions on speech in public spaces. FALA members are often on the front lines of First Amendment litigation, and the organization frequently appears as amicus to protect against government encroachment on constitutional expression.

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan, nonprofit that defends the rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended First Amendment rights on college campuses nationwide through public advocacy, targeted litigation, and *amicus curiae* filings in cases that implicate expressive rights. In June 2022, FIRE expanded its advocacy beyond the university setting and now defends First Amendment rights both on campus and in society at large. In lawsuits across the United States, FIRE works to vindicate First Amendment rights without regard to the speakers' views. *See, e.g.*, *Trump v. Selzer*, No. 4:24-cv-449 (S.D. Iowa filed Dec. 17, 2024); *Volokh v. James*, No. 23-

---

1 No counsel for a party authored this brief in whole or in part. Further, no person, other than *amici*, their members, or their counsel contributed money intended to fund this brief's preparation or submission.

356 (2d Cir. argued Feb. 16, 2024); *Novoa v. Diaz*, No. 4:22-cv-324, (N.D. Fla., Nov. 17, 2022), *appeal docketed*, No. 22-13994 (11th Cir. argued June 14, 2024); *Netchoice, LLC v. Bonta*, 2025 WL 807961 (N.D. Cal. Mar. 13, 2025)). FIRE has a longstanding interest in, among other safeguards for free speech, ensuring that public fora, both on campus and off, remain open for free expression of all kinds. *See, e.g., Dubash v. City of Houston*, 2024 WL 4355196 (S.D. Tex. Sept. 30, 2024), *appeal docketed*, No. 24-20485 (5th Cir.); *Sanders v. Guzman*, No. 1:15-cv-426 (W.D. Tex. filed May 20, 2015); *Sinapi-Riddle v. Citrus Comm. Coll.*, No. CV-14-05104 (C.D. Cal. filed July 1, 2014).

The National Press Photographers Association (NPPA) is a 501(c)(6) nonprofit founded in 1946 to advocate for the rights of visual journalists, including photojournalists, videographers, and multimedia reporters. NPPA promotes the highest standards in visual journalism and works to protect its members' right to gather and disseminate news—particularly in public places where government efforts to limit press access can chill constitutionally protected activity. NPPA has a long history of litigation and public advocacy on behalf of photographers and press freedom, especially where law enforcement or judicial actions restrict newsgathering in public forums.

## ARGUMENT

*Amici* are very concerned about the conduct of the police after the amendment to the original buffer zone order (New Order). The police have demonstrated that despite the cosmetic alterations in the New Order, they are enforcing it in the same unconstitutional manner as in previous version: interfering with and arresting journalists, protesters, and demonstrators based upon constitutionally-protected activities. See Pl. Brief Ex. A-D. Journalist Thomas Derosier was forcibly removed – and injured – by the police from the sidewalk merely for gathering information. See Exhibit 1 (Voluntary Statement of Thomas Derosier to the police). Demonstrator-plaintiff Jason Grant was barred from carrying a religious sign across the street from the courthouse -- a sign that merely quoted a Bible verse that said nothing about the trial or its participants. Pl. Ex. A. And Demonstrator Erica Walsh was forcibly arrested and criminally charged merely for wearing clothing on the sidewalk that stated that "Criminals Control Norfolk County" and a hat with the initials "FKR" on it.. Pl. Ex. B. All of these unconstitutional police actions have occurred in the last few days, under the New Order. Such brazenly un-American acts by the police demonstrate that the New Order is constitutionally infirm and requires a preliminary injunction to prevent further and irreparable harm.

1. The New Order is still unconstitutionally vague. Purportedly, it adds a

3

*mens rea* requirement, of "intent to influence" any trial participants – a standard so vague that it quite literally defies definition. As a matter of course, demonstrators in any situation wish to influence whatever they are demonstrating about, whether positively or negatively. This "intent to influence" language is thus no more than an attempted end-run around the First Amendment. And as the police actions this week have shown, the phrase "intent to influence" has been misinterpreted as covering journalistic activities, that led to police interfering with and roughing-up journalist Tom Derosier. See Exhibit 1. Per *Chicago v. Morales,* 527 U.S. 41, 64 (1999), the order is unconstitutionally vague, as it invests "too much discretion to the police and too little notice to citizens who wish to use the public streets." Quite literally, the New Order gives the average citizen no warning – until police begin making arrests  – that activities such as newsgathering or complaining about corrupt officials or religious proselytizing are now prohibited.

2. The New Order is also –still –  sweepingly overbroad, as to both geographic scope and  those people whose rights are chilled by its restrictions. By its very language, the New Order bars all demonstrators and protests – including those unrelated to the Karen Read trial. This means the New Order has swept away the rights of those people who are interested in demonstrating against cases (or issues) completely unrelated to the Karen Read criminal matter. People having loved ones incarcerated on charges of theft or other matters are barred, as are those

involved in civil suits.

In addition, because the New Order reaffirms the previous order's 200-foot radius of the buffer zone, this zone extends far beyond the Superior Court property, literally to the sidewalk on the opposite side of the street in front of other courthouses, including the District Court house. See Exhibit 2. (Google Map of courthouses showing distance less than 200 foot). Thus, a journalist covering newsworthy events or a person demonstrating in front of the *District Court* across the street *on an unrelated case* is subject to arrest by the police under this New Order. This is clearly not narrowly tailored or the least restrictive means to accomplish any goal; instead, the New Order demolishes the rights of journalists and every Massachusetts resident attending District Court to cover the news or say anything in protest or demonstration about anything, even if safely across the street from the Superior Court and talking about a completely different matter.

3. The New Order hearings in the Superior Court also do not comport with Due Process. Although the New Order purports to grant a hearing in Superior Court to "any person whose activity has been restricted by an officer enforcing this order," this hearing is worthless to victims such as Erica Walsh. As background, persons criminally charged with violating the New Order will almost certainly be charged with misdemeanors such as disturbing the peace, picketing, and trespass, as Ms. Walsh was. See Pl. Ex. B. However, these crimes are misdemeanors under

5

Massachusetts law. See M.G.L. c. 274 § 1 (defining felony and misdemeanors); M.G.L. c. 268 § 120 (defining trespass); M.G.L. c. 268 § 13A (defining picketing); M.G.L. c. 272 § 53 (disturbing the peace). Misdemeanors in Massachusetts are given original jurisdiction in the District Court – an entity separate and distinct from the Superior Court. M.G.L. c. 218 § 26. While the Superior Court shares "concurrent jurisdiction" on misdemeanors with the District Court, criminal complaints originally issue out of the District Court, after probable cause is found. Thus a New Order hearing in the Superior Court, even if as "expeditiously as possible," does nothing to squelch a criminal complaint in the District Court when it emerges unless the Superior Court is immediately going to overrule a District Court – or preemptively prevent a criminal complaint from issuing.

Perhaps more importantly, nothing in the New Order requires the Commonwealth to appear at the Superior Court hearing[2], nor evidence presented or witnesses heard from, and thus it cannot be a true adversarial probable cause hearing that could serve as a factual basis to dismiss charges. Thus, the New Order's Superior Court hearing is a Potemkin village – a hearing that appears to offer speedy and efficient Due Process but in reality does nothing to effectuate or

---

[2] Indeed, counsel for *amici* observed as much first-hand at the May 20, 2025, Superior Court New Order hearing. The Commonwealth sat in the audience and openly stated it did not believe it had to be there, the Superior Court took no statements or arguments from the Commonwealth, and it did not hear from any witnesses or receive evidence during oral argument.

protect the rights of journalists or demonstrators, because it is not empowered or authorized to dismiss criminal charges in the District Court or otherwise conduct probable cause hearings.

The decision released yesterday after the hearing does not render these issues moot. The Superior Court reinforced the criminal charges against Ms. Walsh without a probable cause hearing or otherwise hearing evidence from her on the issue, instead denying her any relief from the New Order's enforcement. See Exhibit 3 (Superior Court Order of May 21, 2025). And while the decision did find that Mr. Derosier and Mr. Grant did not violate the New Order, there was no requirement that police cease and desist  removing and/or barring them from the buffer zone. As this latest decision came 72 hours after the their removal/barring,in a trial that lasts only weeks, three days to gain relief is a huge infringement upon First Amendment activities, especially those related to the gathering and dissemination of news, where time is of the essence. Thus, the Superior Court's hearing process does not save the New Order from violating constitutional rights or render these issues moot.

4. Finally, the New Order is a classic prior restraint that restricts freedom of the press and speech in quintessential traditional public fora—sidewalks and streets surrounding a courthouse—and thus triggers strict scrutiny, a standard it fails because it sweeps far more broadly than necessary to serve any compelling

governmental interest. *United States v. Kokinda*, 497 U.S. 720, 743 (1990) *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015), and fails to leave open ample alternative channels for gathering the news. To be sure, courts have over time have recognized "jurisprudential inconsistencies that plague the public forum doctrine" and "confusion that has permeated courts' opinions across the land, percolating for decades," *e.g.*, *Mitchell v. Maryland Motor Vehicle Admin.*, 148 A.3d 319, 331 & n.13 (Md. 2016) (collecting cases), so to any extent that speech regulations in traditional public fora must be content-based to trigger strict scrutiny, *see*, *e.g.*, *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1, 11 (2018); *March  v. Mills*, 867 F.3d 46, 54 (1st Cir. 2017); *but see*, *e.g.*, *Brindley v. City of Memphis*, 934 F.3d 461, 467 (6th Cir. 2019), the New Order qualifies, as the Plaintiffs illustrate. The New Order bars all content that can be construed as "demonstrating," and therefore is a content-based restriction triggering strict scrutiny.

Here, the New Order is not narrowly tailored; it sweeps across the street, chills newsgathering activities,  and obliterates the rights of anyone to demonstrate for any purpose (including religious proselytization, see Pl. Ex. A), all while offering no real remedies or ample alternative channels for speech, and "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *McCullen v. Coakley*, 573 U.S. 464, 486, (2014) (quoting *Ward*, 491 U.S. at 799). Hence, under either strict scrutiny or intermediate scrutiny, the New

Order fails to deliver.

## CONCLUSION

For all the reasons set forth above, a preliminary injunction should enter. The constitutional violations continue to pile up due to the New Order's vagueness, overbreadth, and lack of narrow-tailoring. Each day the New Order remains in effect, the rights of journalists to gather and disseminate news, and  people to demonstrate, protest, inform, proselytize, or argue is deeply infringed. For all of the above reasons, *amici* agree with Plaintiffs that the District Court should enter a preliminary injunction.

Dated: May 22, 2025                    /s/ John G. Mateus, Esq.
                                       John G. Mateus, Esq.
                                       400 W. Cummings Park
                                       Suite 1725-119
                                       Woburn, MA 01801
                                       John@MateusLaw.com
                                       617-475-0158
                                       BBO # 671181
                                       Attorneys for Amici

                                       Mickey H. Osterreicher
                                       General Counsel
                                       National Press Photographers
                                       Association
                                       70 Niagara Street
                                       Buffalo, NY 14202
                                       (716) 983-7800
                                       lawyer@nppa.org


                                       Ronald G. London
                                       Foundation for Individual
                                       Rights and Expression
                                       700 Pennsylvania Ave. SE, Ste. 340
                                       Washington, DC 20003
                                       (215) 717-3473
                                       ronnie.london@thefire.org
                                       Counsel for Amici Curiae

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Civil Procedure, I certify the following:

1.     This brief contains 1442 words, excluding the parts of the brief exempted.

2.     This brief was prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: May 22, 2025                          /s/ John G. Mateus, Esq.
                                                          *John G. Mateus, Esq.*

## CERTIFICATE OF SERVICE

The undersigned certifies that an electronic copy of this document was filed with the Clerk of the Court for the United States District Court for the District of Massachusetts using the CM/ECF system. The undersigned also certifies all parties in this case are represented by counsel who are registered CM/ECF users, and that service of the brief will be accomplished by the CM/ECF system.

Dated: May 22, 2025                                     /s/ John G. Mateus, Esq.
                                                        *John G. Mateus, Esq.*

# EXHIBIT 1

... 
... 



CADY



COASTAL
Med Trans
$.C.R

# TOWN OF DEDHAM

## COMMONWEALTH OF MASSACHUSETTS



**DEPARTMENT OF POLICE**

Michael J. d'Entremont
Chief of Police

600 High Street
Dedham, MA 02026
Phone 781-751-9300
Fax 781-751-9330
www.dedhampolice.org

## VOLUNTARY STATEMENT

Incident No. 25-016765                                                    Page____

I am 56 years of age and live at 501 Pine Circle
While Video Taping the Trail for Journalist Purposes,
I was Standing + the Sidewalk → Sgt Hardman
Ticked me up aggressively and Carried me
across the Street and yelled at me to
Stay over there. The ans not Preced ared I
Did Exactly As the Trooper told me to do-
my Left Arm is swollen + tingles to my
Finger Tips

See Page 1 ⇒ Black Ink

I make this voluntary statement of my own free will, absent coercion or duress. I have read each page of this statement consisting of ___ page(s), each page of which bears my signature. Corrections, if any, bear my initials. I certify that the facts contained herein are true and correct. Statements made on this form are made under the penalties of perjury. False statements shall be prosecuted under the provisions of MGL Ch. 268, s 2, Ch. 268, s 6, and or Ch. 269, s 13A.

Time: 9:43 am/pm, this 14th DAY OF: May                    YEAR 2025
SIGNATURE OF PERSON GIVING STATEMENT: _____
PRINTED NAME: Thomas K Derosier
WITNESS (Print) Paul Carly                    SIGNATUE: _____

*The mission of the Dedham Police Department is to protect and serve the citizens of Dedham through collaboration, preventative programs and the judicious enforcement of the laws of the Commonwealth of Massachusetts and the by-laws of the Town of Dedham.*

**VOLUNTARY STATEMENT (CONTINUED)**

Page ①

I Thomas Dersier of 501 Pine Circle Whitman, MA, 02382, I was in Dedham to Film the Kareen Read Trial as A Journalist as I Have Been filming the Trial from Day 1. I was on the Sidewalk standing where I was instructed to stand on Friday the 16th By Trooper Sg Hardman. Today, He Aperdeched me and picked me up and Dragged me across the Road and Threw me onto the other Sidewalk. He yelled at me to stay, my arm was Instantly painful where he grabbed me and Dragged. I went to Dedham P.D + Filed this Report, The Ambulance Come and I chose to go to my own Doctor as Advised.

Almost every Day I have filmed Karens Trial, Its Been 1.75 years and I have always Listen to Them, Todays Assault was unfounded and with out any Reason. He was very Angry + Came up To his Car and again yelled at me, for what? he There was No Reason, - No Reason!!!

I swear to All of This under Peaulty of Pergery

Signature: _____   Printed name: Thomas K Dersier

# EXHIBIT 2

644-626 High St, Dedham, MA 02026 to 649-659 High St, Dedham, MA 02026 - Google Maps



644-626 High St, Dedham, MA 02026 to 649-659 High St, Dedham, MA 02026 — Walk 187 ft, 1 min



Map data ©2025 Google 100 ft



Norfolk County Superior Court



Imagery ©2025 Airbus, Maxar Technologies, Map data ©2025 Google    50 ft

# EXHIBIT 3

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CRIMINAL ACTION
22-00117

COMMONWEALTH

vs.

KAREN READ

### MEMORANDUM OF DECISION AND ORDER ON THOMAS DEROSIER'S, JASON GRANT'S, AND ERICA WALSH'S EMERGENCY REQUESTS FOR REVIEW PER SUPPLEMENTAL ORDER REGARDING THE BUFFER ZONE

Before the court are three emergency petitions for review pursuant to the May 15, 2025, Supplemental Order Regarding the Buffer Zone issued by Judge Beverly J. Cannone (Docket No. 692) (Buffer Zone Order). After a hearing and review of the petitioners' written submissions, the petitions of Thomas Derosier and Jason Grant are **ALLOWED** in part and **DENIED** in part, and the petition of Erica Walsh is **DENIED**.[1]

### BACKGROUND

The Buffer Zone Order arose in the context of the *Commonwealth* v. *Read* case, which "has drawn . . . throngs of demonstrators near the Norfolk County Courthouse[,]" including "loud protests and the display of materials directed toward trial participants . . . ." *Grant* v. *Trial Ct. of Mass.*, U.S. Ct. App., No. 25-1380, slip op. at 3 (1st Cir. May 9, 2025). Intended to ensure a fair trial with an impartial jury, the Buffer Zone Order, which supplements a prior order dated March 25, 2025 (Docket No. 630), generally limits demonstrations at the Norfolk County Courthouse and within a "buffer zone" surrounding the courthouse during the *Read* trial. Among other things, the Buffer Zone Order prohibits within the buffer zone "noisy protests" and "the

---

[1] The Office of the Attorney General was notified of the petitions but did not file a response or attend the hearing.

display of written or graphic materials" that are "intended to interfere with the administration of

justice or are intended to influence any judge, juror, witness, or court officer" in the discharge of

their duties.[2] Buffer Zone Order at 1. Specifically excluded from the scope of the buffer zone

restrictions are "[q]uiet, offsite demonstrations on public property, in areas and at times that do

not interfere with trial participants' entrance into or exit from the Courthouse, and that do not

interfere with the orderly administration of justice, and that are not intended to influence any trial

participants in the discharge of their duties . . . ." *Id.* at 1-2.

The petitioners claim that the police unlawfully applied the Buffer Zone Order to restrict

their activities outside the courthouse. Specifically, the police: (1) removed Derosier from an

area across the street from the courthouse because he was "peacefully filming" the courthouse's

exterior; (2) did not permit Grant to stand across the street from the courthouse while holding an

American flag and a sign displaying a Bible verse, 2 Corinthians 3:17: "NOW THE LORD IS

THE SPIRIT, AND WHERE THE SPIRIT OF THE LORD IS, THERE IS FREEDOM;" and (3)

arrested Walsh for trespassing while on a public sidewalk across the street from the courthouse

because she was wearing a sweatshirt stating, "criminals control Norfolk County."

## DISCUSSION

The petitioners request that the court invalidate the Buffer Zone Order in its entirety.

This court declines to do so for the reasons given in the original Buffer Zone Order and as

revised. The petitioners also seek judicial review pursuant to paragraph five of the Buffer Zone

Order, which provides that "any person whose activity has been restricted by an officer enforcing

this order may request review by a judge of the Superior Court, which request shall be heard as

expeditiously as possible." Buffer Zone Order at 1. These claims largely turn on whether the

---

[2] The First Circuit has suggested that in this form, the Buffer Zone Order comports with the First Amendment. See *Grant*, U.S. Ct. App., No. 25-1380, slip op. at 12.

2

activities at issue within the buffer zone were "intended to interfere with the administration of justice" or "intended to influence any judge, juror, witness, or court officer" in the discharge of their duties. See Buffer Zone Order at 1. See also *Grant*, U.S. Ct. App., No. 25-1380, slip op. at 9-10, citing *Cox* v. *State of Louisiana*, 379 U.S. 559, 560-564 (1965) (recognizing that state statute criminalizing picketing and parading near courthouse survived First Amendment review where statute "bar[red] only protests directed toward interfering with the administration of justice or influencing trial participants").

Based on the limited record before the court, it does not appear that Derosier's conduct in "peacefully filming" the courthouse's exterior from across the street, but not any jurors or other trial participants, was, by itself, intended to interfere with the administration of justice or influence anyone involved in the *Read* trial. Nothing before the court suggests that Derosier was being noisy, let alone protesting, demonstrating, or interfering with anything or anyone at all. Accordingly, Derosier did not violate the Buffer Zone Order.

Grant's conduct is a closer question. Certainly, waving an American flag and displaying a Bible verse about freedom may be intended as acts of patriotism and religious expression. Such conduct gives the court pause, however, in the context of the *Read* trial where some members of the public are passionate and vocal about their desire to, in their words, "free" the defendant. In addition, Grant's location, across the street from the courthouse and apparently just outside of the Norfolk County Registry of Deeds (which houses the grand jury, the jury pool, and probation and other Superior Court offices), was ill-advised because, in this court's view, that area may fall within the scope of courthouse property where all demonstrations are prohibited under the Buffer Zone Order. Nevertheless, assuming that Grant was not on courthouse property but within the buffer zone, the court finds no violation of the Buffer Zone

3

Order because the record does not show that he was acting in a manner suggesting that he intended to interfere with the administration of justice or influence a trial participant.

Walsh stands on different footing. In the context of the ongoing *Read* trial, which has generated some public sentiment against Norfolk County officials, wearing a sweatshirt stating "criminals control Norfolk County" while across the street from the courthouse demonstrates an intent to interfere with the administration of justice and influence the *Read* jury. See *Cox*, 379 U.S. at 567 ("a group of demonstrators parading and picketing before a courthouse where a criminal charge is pending, in protest against the arrest of those charged, may be presumed to intend to influence judges, jurors, witnesses or court officials"); *Grant*, at 11-12. Because in this specific context, where Walsh was standing in close proximity to the courthouse, within the line of sight of trial participants, while wearing a visible message criticizing participants from Norfolk County, including law enforcement officers, prosecutors and the court itself, Walsh's conduct was directed toward "interfer[ing] with the administration of justice" and "influenc[ing] any judge, juror, witness, or court officer" in the discharge of their duties, Buffer Zone Order at 1, Walsh violated the Buffer Zone Order. Thus, contrary to Walsh's argument, the officer's actions pursuant to the Buffer Zone Order did not violate her First Amendment rights.

## ORDER

For the foregoing reasons, it is hereby **ORDERED** that Thomas Derosier's Emergency Request for Review Per Supplemental Order Regarding the Buffer Zone and Jason Grant's Emergency Request for Review Per Supplemental Order Regarding the Buffer Zone are **ALLOWED** in part as follows: Derosier and Grant did not violate the Supplemental Order Regarding the Buffer Zone dated May 15, 2025. It is further **ORDERED** that Derosier's and

4

Grant's petitions are otherwise **DENIED**, and Erica Walsh's Emergency Request for Review Per

Supplemental Order Regarding the Buffer Zone is **DENIED**.

Date:   May 21, 2025

Michael P. Doolin
Justice of the Superior Court

5