UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON GRANT, ALLISON TAGGART, LISA PETERSON, and SAMANTHA LYONS,<br><br>Plaintiffs,<br><br>v.<br><br>TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS, BEVERLY J. CANNONE, in her official capacity as Justice of the Superior Court, GEOFFREY NOBLE, as Superintendent of the Massachusetts State Police; MICHAEL d'ENTREMONT, in his official capacity as Chief of the Police Department of the Town of Dedham, Massachusetts, and MICHAEL W. MORRISSEY, in his official capacity as the Norfolk County District Attorney,<br><br>Defendants. | Civil Action No. 1:25-cv-10770-MJJ<br><br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL** |

In but a footnote, without citation to any precedent or other authority, the Court determined that Judge Cannone has the "inherent authority" to do anything to anyone so long as it "protect[s] the fairness and integrity of the judicial process and ensuring fair procedure for all parties." (ECF No. 76 at 10 n. 5). "These actions are plainly beyond the bounds of what Defendants can do, and Defendants do not point to any authority to the contrary." *New York v. McMahon*, Civil Action No. 25-10601-MJJ, 2025 U.S. Dist. LEXIS 97722, at *85-86 (D. Mass. May 22, 2025)(Joun, U.S.D.J.). Yet, in contrast to what this very Court decided a week prior, Judge Cannone can fire all court staff and raze the courthouse. She can order Russian or Floridian bot farm operators to post nothing online about her or her cases, ever. Apparently, she can even quarter troops in residences in Massachusetts, if she thinks it is necessary to protect whatever she asserts the judicial process requires.

This Court's order endorsing Judge Cannone's actions offends the Due Process Clause of the 14th Amendment which requires that a court can only exercise jurisdiction over a person "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Court has not engaged with the fact that the Buffer Zone orders are injunctions against the public, including Plaintiffs, over whom there is no personal jurisdiction and against whom there was no lawful notice or opportunity to be heard.

Moreover, in attempting to split the baby, the Court has done exactly what the First Circuit said not to. Judge Cannone gave lip service to a *mens rea* requirement that the First Circuit believed necessary. This Court, however, just determined that some speech could be prohibited under the amended Buffer Zone order irrespective of the intent of the speaker, e.g., that a hat with a tiny "FKR" on a hat, pointed away from the courthouse, where no one could see it, violated the order, even if the wearer had no intent that anyone affiliated with the trial see it. And, the Court did not address the 200-foot and beyond boundaries of the zone, despite citing twice to *McCullen v. Coakley*, 573 U.S. 464 (2014), which found a 35-foot buffer zone overbroad and unconstitutional.

Plaintiffs move this Court for an injunction pending appeal pursuant to Fed. R. Civ. P. 62(d) & Fed. R. App. P. 8(a)(1).[1] This Motion is brought on an emergency basis, because every day of the First Amendment being unlawfully suppressed in Dedham, Massachusetts is irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable harm"). Hearing a motion

---

[1] Plaintiffs originally sought such in the alternative when they filed their motion for temporary restraining order and for preliminary injunction (ECF No. 2), but the Court did not adjudicate that part of the request on remand.

in the ordinary course would be futile and delay the ability of the Plaintiffs to seek an injunction pending appeal from the First Circuit.

Given the factual exigency—trial is ongoing—and the fact that the Court's analysis of the Buffer Zone Order was incomplete and reversible, an injunction pending appeal will be requested from the First Circuit unless this Honorable Court decides to grant it now, as it should.

**1.0     Legal Standard**

An injunction pending appeal is proper if the movant makes "a strong showing that they are likely to succeed on the merits, that they will be irreparably injured absent emergency relief, that the balance of the equities favors them, and that an injunction is in the public interest." *Together Emples v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 7 (1st Cir. 2021). The test is nearly identical to the standard test for a preliminary injunction. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Just as Plaintiffs believe the Court should have granted the preliminary injunction in full, an injunction pending appeal is warranted. Moreover, as the Court already found the other factors warranted injunctive relief, the only real question is likelihood of success.

**2.0     Analysis**

**2.1     The Buffer Zone Order Must be Enjoined for Lack of Due Process—Plaintiffs were Not Subject to Cannone's Jurisdiction and They Lacked Notice and Opportunity to be Heard**

Judge Cannone had no jurisdiction over Plaintiffs, yet she issued an injunction against them and every other living person who might set foot within 200 feet of the courthouse. Is your house within the zone? It's under Judge Cannone's control now, Third, Fourth, and Fifth Amendments beside. Are you going to one of the churches in the zone? Judge Cannone can control what you pray. Anything in the name of a fair trial? Of course not. Karen Read's right to a fair trial does not override Plaintiffs' rights, and Judge Cannone cannot do so in derogation of due process.

Due process requires a court to have general or specific jurisdiction over a defendant to avoid "offend[ing] traditional notions of fair play and substantial justice." *Int'l Shoe Co., supra*. Similarly, jurisdiction typically does not attach until service of a writ or other process. *Chisholm v. Gilmer*, 299 U.S. 99, 102-103 (1936). "Orders entered without jurisdiction are without legal effect." *61 Park LLC v. Langadinos*, No. 24-1487, 2025 U.S. App. LEXIS 12626, at *3 (1st Cir. Mar. 31, 2025). This includes injunction issued in the absence of personal jurisdiction. *See United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1099 (1st Cir. 1992). This Court has been repeatedly asked to set forth when and how Judge Cannone obtained personal jurisdiction over Plaintiffs (and the world). This question has been met with silence.

The term "inherent authority" does not grant Judge Cannone dictatorial powers to do whatever she wants, whenever she wants. Judge Cannone forged this false power out of nothing. It is as if Judge Cannone forged a "Ring of Power" that this Court has been asked to toss into Mount Doom. And instead of doing so, as it should, the courts have thus far simply asked themselves "why shouldn't I keep it?" Rather, there is no reported case in which a judge simply decided that she was the ruler by fiat over any territory, both public and private, and any person outside her courthouse, irrespective of jurisdiction.[2] Inherent authority is circumscribed by jurisdiction, to wit, it is

> the power possessed by a court simply because it is a court; it is [ ] authority that inheres in the very nature of a judicial body and requires no grant of power other than that which creates the court and gives it jurisdiction. This power is often described as 'supervisory power' over the parties and actors within the jurisdiction of a particular court

*United States v. Brown*, 2022 U.S. Dist. LEXIS 146271, at *1 (D.S.D. Aug. 12, 2022) (quoting

---

[2] To suggest otherwise would mean that Judge Cannone's order is a general warrant that leaves "to the discretion of the executing officials the decision as to which persons should be arrested[,]" an affront to the Fourth Amendment. *Steagald v. United States*, 451 U.S. 204, 220 (1981).

Jeffrey C. Robbins, *The Inherent and Supervisory Power*, 54 GA. L. REV. 411, 422 (2020)). That is, if she lacked jurisdiction over Plaintiffs, then she has no inherent authority to enjoin or otherwise control their actions or speech. And, she had no such jurisdiction. No summons or other writ issued. Plaintiffs do not voluntarily submit to the jurisdiction of the Norfolk Superior Court by walking on a public sidewalk—it is not as if they are entering the grounds and thereby submitting, at least in some limited fashion, to the authority of the court. *Compare* L.R. of the U.S. Dist. Ct. for the Northern Mariana Islands 83.4(e). That local rule requires that people wear shoes to court. The Court most certainly has the right to require that people wear shoes *in court*. But it can't tell people to wear them at the beach, nearby.

Even if she had jurisdiction and, therefore, due process might allow her to exercise her inherent authority in a manner to protect Karen Read's right to a fair trial, Judge Cannone failed to provide procedural due process: notice and opportunity to be heard. Although raised in the prior appeal, the First Circuit only addressed the fact that the buffer zone injunction lacked a *mens rea* requirement. *Grant v. Trial Court*, No. 25-1380, 2025 U.S. App. LEXIS 11261 (1st Cir. May 9, 2025). Thus, the due process question—lack of notice and opportunity to be heard—remains undecided on appeal.

The right to procedural Due Process is a serious thing, and it required serious analysis. This right is protected by the Fourteenth Amendment, which reads, in relevant part: "No state shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." The Massachusetts Constitution also protects procedural due process. *Duarte v. Commissioner of Revenue*, 451 Mass. 399, 412 n.20 (2008) (quoting *Pinnick v. Cleary*, 360 Mass. 1, 14 n.8 (1971)) (holding that "Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, and arts. 1, 10 and 12 of

its Declaration of Rights, are the provisions in our Constitution comparable to the due process clause of the Federal Constitution").

In both the U.S. and Massachusetts Constitutions, the "fundamental requirement of due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 412 (quotation marks and citation omitted). "[T]he specific dictates of due process generally require[] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Aime v. Commonwealth*, 414 Mass. 667, 675 (1993) ("the individual interest at stake must be balanced against the nature of the governmental interest and the risk of an erroneous deprivation of liberty or property under the procedures which the State seeks to use").

In this case, Judge Cannone did not provide notice to any of the Plaintiffs regarding her intent to hold a hearing on (a) whether she had the power to decree *anything* over non-parties, (b) whether she had the power to impose a Buffer Zone, (c) where she allegedly obtained that power, and (d) the interests of the protesters. Judge Cannone might have taken the additional step of inviting participation. After all, the protesters were already standing outside holding signs criticizing her. However, she did not do that. She had previously slammed the courthouse door to anyone who wanted to intervene. Instead, she took the word of the Commonwealth, with no adversarial proceeding at all, and used the hearsay pretext of her hand-selected jury foreman's claims that there was "noise," warranting a wholesale disregard of the First and Fourteenth

Amendments. That Judge Cannone took argument of the Commonwealth, and no one else, at a hearing is no substitute—that they could watch and do nothing is an injustice, it is not due process. Having an opportunity to be heard means having the right to speak, and Plaintiffs had none. Obeying the Constitution might be inconvenient for courts, but that is why it exists. As Plaintiffs are likely to succeed on the appeal on due process grounds, an injunction pending appeal should be issued.

### 2.2  Even as Enjoined, the Buffer Zone Orders Suffer First Amendment Flaws

Although Plaintiffs appreciate the efforts of this Court in limiting the overzealous and wrongful enforcement by the Massachusetts State Police of the buffer zone orders, this Court's narrowing violates the very thing the First Circuit required—*mens rea*. This matter was remanded "this case for further proceedings to determine how the Order has been interpreted and applied and whether the lack of a *mens rea* requirement renders the Order insufficiently tailored." 2025 U.S. App. LEXIS 11261, at *10. As the Court is aware, in the interim, Judge Cannone ostensibly accepted the First Circuit's invitation to "simplify any potential First Amendment issues by amending the Order to introduce a *mens rea* requirement as in *Cox* and Mass. Gen. Laws ch. 268, § 13A (2025) -- i.e., by limiting the Order to demonstrations directed toward interfering with the administration of justice or influencing trial participants." *Id.* This Court deemed the supplemental order by Judge Cannone to have incorporated such a *mens rea* requirement. (ECF No. 76 at 12).

Unfortunately, this Court then went ahead and eviscerated the *mens rea* requirement. It pronounced that "FKR;" "Free Karen Read;" "Convict Karen Read;" "Convict or face consequences;" "No justice, no peace – you've been warned;" "We know where you live;" ""The community is watching;" "Do the right thing;" "Imagine if defendant/victim were your family;"

"Jurors, your conscience matters;" "Remember the victim's family;" ""The law requires a guilty verdict in this case;" "Can't convict, no evidence;" and statements that directly target trial participants or the integrity of the trial include but are not limited to the following: "Judge Cannone is corrupt;" or "Bev's Court is a Clownshow" are all *per se* unprotected. *Id.* at 18. What happened to *mens rea*?

The latter portion is especially an affront to fundamental First Amendment rights. The Court correctly recognized that the sweatshirt "Criminals Control Norfolk County" was lawful because it is a message "commenting or criticizing 'the system' whether that is the courts, the prosecuting agencies, or law enforcement agencies, do not constitute an intent to interfere with the administration of justice or an intent to influence a judge, juror, witness, or court officer. Such messages criticize or call for change without referencing the outcome of the trial." *Id.* at 17-18. Judge Cannone and her court are part of "the system." And by restricting commentary and criticism of Judge Cannone, or of D.A. Morrissey, the Court is restricting political speech. Prior to filing this motion, Defendants were asked about signs calling for citizens to vote for those who would remove Judge Cannone. *See* **Exhibit A**, Declaration of Jay M. Wolman, at ¶¶ 3-4. Such a sign is pure political speech, and Defendants had no answer as to whether that was permissible under this Court's order. *Id.* at ¶ 5. If the lawyer for Judge Cannone, D.A. Morrissey, and the State Police cannot answer that question, how can Plaintiffs be expected to know if they will be arrested and charged over such pure political speech? The Buffer Zone is overbroad. It is not the job of this Court to narrowly tailor it for Judge Cannone. It was her job to do it right the first time. It was her job to do it right the second time. She repeatedly failed, and this Court seems to only be making things more complicated. To vindicate the First Amendment, as the Buffer Zone is not narrowly tailored, a total injunction is required on appeal.

Finally, this Court ignored its duty to make findings. Rather than considering whether 200 feet is too expansive, the Court deferred to the purported findings of Judge Cannone. (ECF No. 76 at 13). That was error. This Court was citing to appellate review cases, but this is not a court of appeals. It is the court of first instance. Moreover, by deferring to Judge Cannone, the Court is only compounding the due process problem—Judge Cannone's findings cannot be entitled to deference where Plaintiffs lacked any opportunity to be heard. They were unable to present the evidence of the juror who said the noise was not a problem. They were unable to confront the hearsay statements of the other juror and Officer Hardman and cross-examine them as to specific assertions. Notably, the 200 foot boundary was established because of noise concerns—Judge Cannone gave no consideration for quiet protest. It was the duty of this Court to evaluate in the first instance whether there was evidence justifying a 200 feet restriction on speech and the Court relied on no admissible evidence, just (at best) the vibes of Judge Cannone, and at worst, her desire to suppress signs that criticize her. Thus, the plaintiffs are likely to succeed on this issue on appeal.

Nor did the Court given any attention to *McCullen v. Coakley*, in which the very fact of a "fixed buffer zone[]" was deemed "truly exceptional" and it "raise[d] concern that the Commonwealth has too readily forgone options that could serve its interests just as well, without substantially burdening the kind of speech in which petitioners wish to engage." 573 U.S. at 490. Judge Cannone had other options—she could simply allow enforcement of Mass. Gen. Laws, ch. 268, §§ 13A & 13B in the usual course. The Karen Read trial is not exceptional. There were demonstrators outside the Dzhokhar Tsarnaev trial. There have been demonstrators outside the numerous Donald Trump trials. All high-profile trials attract demonstrators—whether the trials of the eight soldiers accused of perpetrating the Boston Massacre, or those of individuals like O.J. Simpson, George Zimmerman, or Derek Chauvin. In fact, the Karen Read trial Buffer Zone now

seems to be part of the Commonwealth's modus operandi; in the upcoming trial of Aidan Kearney a/k/a Turtleboy, Plaintiffs are of the understanding that an identical buffer zone order will be sought. *See* **Exhibit A** at ¶ 6. It seems these orders will become universal and permanent—we will have extraordinary violations of the First Amendment everywhere.

We appear to have a newly-created judicial power, to suppress the Constitution, without due process. This Court should not contribute to the erosion of the rule of law; no judge is immune from signs that call her a clown.

### 3.0    CONCLUSION

Judge Cannone, to quash protests that criticize her, decreed that she should not be forced to bear the indignity of people protesting her where she can see or hear them. She does not have that power, and her attempt to create it for herself is offensive to the U.S. and Massachusetts Constitutions. This Court cannot allow her to usher in a new era of First Amendment jurisprudence – where a judge can simply become a dictator over a small fiefdom, without authority, *i.e.* without due process. If a judge is permitted to isolate herself from any public criticism, why shouldn't every citizen have the right to declare "I have the right to prohibit any criticism of my actions that I find unwarranted or unpleasant?" Or why shouldn't the Governor be able to do so? Or President Trump? After all, protests might influence how he governs, and that would be wrong? If the judiciary truly is a co-equal branch of government, then it must be subject to the same criticism as the executive branch. This Court erred. Plaintiffs, therefore, request that it grant the instant Motion for injunctive relief pending appeal while they take this issue to the U.S. Court of Appeals for the First Circuit.

Dated: June 6, 2025.                                        Respectfully Submitted,

/s/ Marc J. Randazza
  Marc J. Randazza, BBO# 651477                             Mark Trammell
  mjr@randazza.com, ecf@randazza.com                        (*Pro Hac Vice*)
  Jay M. Wolman, BBO# 666053                                Center for American Liberty
  jmw@randazza.com                                          P.O. Box 200942
  RANDAZZA LEGAL GROUP, PLLC                                Pittsburgh, PA 15251
  30 Western Avenue                                         Tel: (703) 687-6200
  Gloucester, MA 01930                                      MTrammell@libertyCenter.org
  Tel: (978) 801-1776

*Attorneys for Plaintiffs.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2025 the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza